# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

|  |  |
|---|---|
| HERB CHAMBERS 1186, INC. d/b/a<br>HERB CHAMBERS INFINITI OF BOSTON,<br><br>Plaintiff,<br><br>v.<br><br>DONALD A. SMITH, JR., PRESTIGE AUTO<br>IMPORTS, INC. d/b/a WEBSTER AUTO<br>SALES and REZA PARINEJAD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 12-1515B<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT

1.      Through this action, the plaintiff, Herb Chambers 1186, Inc. d/b/a Herb Chambers

Infiniti of Boston ("Chambers Infiniti"), seeks to recover damages incurred as a result of the

illegal and fraudulent actions of the defendants, each of whom participated in a conspiracy to

unlawfully misappropriate used vehicles from Chambers Infiniti so as to enjoy for themselves

the profit from the resale of the misappropriated vehicles to the public. The defendants include a

corrupt former Chambers Infiniti manager, Donald A. Smith, Jr. ("Smith"), who, together with

his co-defendants Reza Parinejad ("Parinejad") and Prestige Auto Imports, Inc. d/b/a Webster

Auto Sales ("Webster Auto"), ran their own illegal side business whereby Smith improperly

transferred and sold the subject vehicles to Parinejad and Webster Auto utilizing fictitious or

misappropriated identities at a reduced price in exchange for his receipt of payment from his co-

defendants personally despite the fact that the Certificates of Titles ("Titles") to the subject

vehicles were not in his name. As a part of the scheme, Smith would unlawfully transfer and sell

1

additional vehicles in order to cover the "float" for the monies needed to be returned to the dealership in order to cover up his prior misappropriation of vehicles. As a further part of the scheme, the corrupt manager's co-defendants repeatedly resold the misappropriated vehicles to customers at higher prices resulting in a profit to them and a loss to Chambers Infiniti.

2.      There is no dispute here that this scheme took place.  Smith, a former, now fired corrupt general sales manager of Chambers Infiniti, has already admitted the details of the defendants' unlawful activity. *See* Smith Affidavit (attached as Ex. A).

3.      Chambers Infiniti does not yet know the full extent of the scheme committed against it or the full amount of money lost because of the unlawful actions of the defendants. Indeed, the deeper Chambers Infiniti looks, the more vehicles it finds were misappropriated by Smith, Parinejad and Webster Auto.  Chambers Infiniti is aware of at least twenty (20) vehicles that were misappropriated by the defendants before Chambers Infiniti had a chance to sell them at retail.  Plaintiff's investigation continues.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court over the Defendants is lawful and proper pursuant to G.L. c. 223A, § 1 et seq. because the defendants either reside or have their places of business in Massachusetts.

5.      Venue exists in this county pursuant to G. L. c. 223, § 1 et seq., where Chambers Infiniti has its principal place of business in Suffolk County.

## PARTIES

6.      Chambers Infiniti is a Massachusetts corporation with a principal place of business at 1186 Commonwealth Avenue, Boston, Massachusetts.

7.      Smith is a former employee of Webster Auto and Chambers Infiniti and resides at 8 Juniper Road, Upton, Massachusetts.

8.      Webster Auto is a Massachusetts corporation having its principal place of business at 61 Prospect Street, Somerville, Massachusetts.  It is a Class 2 Used Car Dealer licensed in Somerville.

9.      Parinejad is the President of Webster Auto and resides at 78 Truman Road, Newton, Massachusetts.

## FACTS

### a.  Background

10.     Chambers Infiniti operates a franchised automobile dealership in Boston, Massachusetts from which it retails new and used vehicles directly to the public.  On occasion, Chambers Infiniti sells used vehicles at wholesale prices to other authorized dealerships or to the Lynnway Auto Auction, which is a third-party that sells vehicles at auction on consignment. One purpose of wholesaling only to authorized dealerships or the Lynnway Auto Auction is to prevent employees from appropriating vehicles at discounted wholesale prices, selling to customers at higher markup prices, and then keeping the profit for themselves (and not the dealership).

11.     Smith, a former General Sales Manager of Chambers Infiniti who was fired for his actions giving rise to this complaint, has worked in the automotive industry for his entire career spanning more than twenty (20) years, and had been employed by Chambers Infiniti since October 1, 2009.

12.     As a General Sales Manager, Smith was placed in a position of trust at the dealership and had full knowledge and understanding of the processes by which Chambers

3

Infiniti sold cars directly to customers and, alternatively, wholesaled vehicles solely to authorized dealerships and to the Lynnway Auto Auction. Smith also knew how the billing and financing of each process worked. As a General Sales Manager, Smith had full access to the Titles for every vehicle on Chambers Infiniti's dealership lot.

   b.   **Chambers Infiniti Discovers Defendants' Unlawful Scam**

   13.   On or about April 5, 2012, Chambers Infiniti learned of a discrepancy in one of Smith's sales regarding the improper structuring of cash payments.

   14.   On or about April 9, 2012, Bradford A. Gomes, Director of Operations for The Herb Chambers Companies, questioned Smith about this discrepancy. Smith admitted that he had improperly structured a cash transaction, and was immediately fired and escorted off Chambers Infiniti's premises.

   15.   On April 10, 2012, an employee of Chambers Infiniti discovered that a 2004 Hummer H2 was missing from the plaintiff's dealership lot, and contacted Smith about its location. Later that day, Smith and/or his attorney informed Chambers Infiniti that Smith had improperly wholesaled the Hummer to Parinejad at Webster Auto, an *un*authorized used-car dealer. Smith and/or his attorney informed Chambers Infiniti that this was the only car Smith had improperly wholesaled.

   c.   **April 16, 2012 Meeting**

   16.   On April 16, 2012, Smith and his legal counsel voluntarily appeared for a meeting with Mr. Gomes and others. The purpose of the meeting was to allow Chambers Infiniti to determine the full extent of the harm caused by Smith.

   17.   At that meeting, Smith described in detail the process by which he, with the substantial assistance of Parinejad and Webster Auto, entered into numerous transactions in an

effort to take for themselves and from Chambers Infiniti thousands of dollars. Smith described

how he would wholesale vehicles to Parinejad and Webster Auto in knowing violation of

Chambers Infiniti's company policy in return for cash payments made directly to him or for

checks paid directly to him in his personal capacity which he deposited into his personal bank

account. Smith described how Parinejad knew from the Titles that he (Smith) was not the actual

owner of the vehicles but nevertheless paid him personally. Smith described how he would then

provide Parinejad with the wholesaled vehicles and with a Title showing a sale from Chambers

Infiniti (not Smith). Smith would subsequently repay Chambers Infiniti in cash or with a

cashier's check with the proceeds from his latest unlawful transaction in order to mask the

scheme but the amounts would not include the profit from the resale of the vehicle as that profit

was taken by Parinejad/Webster Auto.

18.    According to Smith, Parinejad knew that Chambers Infiniti did not wholesale cars

to used-car dealers because of Chambers Infiniti's well-known policy against wholesaling to

anyone other than an authorized dealership or the Lynnway Auto Auction.

19.    Indeed, Parinejad has testified at his deposition that he knew Chambers Infiniti

did not wholesale cars to other used car dealers.

**d.    Smith's Affidavit**

20.    Since that meeting on April 16, 2012, Smith has testified, and Chambers Infiniti's

investigation has confirmed, that Smith, Parinejad and Webster Auto conspired to misappropriate

many more vehicles from Chambers Infiniti.

21.    On April 7, 2013, Smith testified under oath by affidavit to the intimate details of

his conspiracy with Parinejad and Webster Auto to misappropriate vehicles from Chambers

Infiniti and how they profited from same. *See* Ex. A.

22.     Smith testified that he has known Parinejad for approximately 15 years and worked on and off for him at either Webster Auto and/or his other used-car dealership, Great Road Auto Imports, which is no longer in business. *Id.*, ¶4.

23.     Smith testified that towards the end of 2010, he began experiencing serious financial difficulties and requested and received financial loans from Parinejad. Parinejad loaned Smith $900 on November 30, 2010, and Smith reimbursed him $300 on December 10, 2010 and another $300 on December 18, 2010. He thinks he paid Parinejad the additional $300 as well. Parinejad loaned Smith an additional $2,000 on December 22, 2010. *Id.*, ¶5.

24.     Smith testified that at or around this time Parinejad approached him with an alternative way to repay the money he had loaned to Smith. Specifically, Parinejad proposed that Smith sell him used vehicles from Chambers Infiniti's inventory at discounted rates so that he could then resell them through his used-car dealership(s) at retail rates. Smith agreed. *Id.*, ¶6.

25.     Smith testified that, under their agreed upon plan, Smith provided Parinejad with the original Title for each vehicle with the purchaser and the odometer box portions in the next "Re-Assignment by Licensed Dealer" section empty. Parinejad would then write in Webster Auto's name as the purchaser on the back of the Title to make it look like a valid dealer-to-dealer transfer. They agreed to do this despite them both knowing that Chambers Infiniti had a specific policy that prevented Chambers Infiniti from selling or transferring vehicles to used-car dealers. *Id.*, ¶7.

26.     Smith testified that, under their agreed upon plan, Parinejad/Webster Auto would pay Smith personally an amount for each vehicle that Parinejad determined. These amounts were far below wholesale and retail market rates for these vehicles. *Id.*, ¶7.

27.    Smith testified that, under their agreed upon plan, to conceal the misappropriation of the vehicle and sale to Parinejad/Webster Auto, Smith would create a fake Purchase Sale Contract showing the sale of the vehicle to a purportedly legitimate purchaser. At times, Parinejad would provide Smith with names and driver's licenses of purported legitimate purchasers. Smith would also enter this fake purchaser's name on the back of the copied Title for Chambers Infiniti's records. Smith would pay Chambers Infiniti an amount that he determined and indicated on the fake Purchase Sale Contract. Smith was able to make a profit and simultaneously cancel his debt with Parinejad. *Id.*, ¶7.

28.    Smith testified that he and Parinejad did not execute Purchase Sale Contracts, Titles or odometer disclosure statements as required by law so that Chambers Infiniti and the Registry of Motor Vehicles would not discover what they were doing. *Id.*, ¶8.

29.    Smith testified that none of the vehicles Parinejad/Webster Auto acquired under their scam had been designated to be transferred to the auction. Smith cherry picked the vehicles at Chambers Infiniti that suited his needs so that he could generate a larger profit when he resold them to the public. *Id.*, ¶10.

30.    Smith testified that Parinejad knew that Chambers Infiniti did not wholesale cars to other used-car dealers because he had previously illegitimately purchased vehicles at Toyota of Boston using employee names in a similar fashion. *Id.*, ¶11.

31.    Smith testified that he never told Parinejad that Chambers Infiniti had an employee purchase program that allowed employees to purchase vehicles from the dealership and then resell them. Chambers Infiniti does not have such a program. Chambers Infiniti does have a program whereby an employee can purchase up to 2 vehicles per year for personal use only. *Id.*, ¶12.

7

32.     Smith testified that Parinejad/Webster Auto misappropriated additional vehicles from other dealerships through other employees of the plaintiff.  *Id.*, ¶18.

### e.     Retail Vehicles Misappropriated Under The Conspiracy

33.     To date, plaintiff has uncovered at least twenty (20) vehicles misappropriated by Smith, Parinejad and Webster Auto from its Infiniti dealership, whereby (except as detailed below) Parinejad or Webster Auto paid Smith personally in exchange for the vehicles and their Titles, all of which indicated that Chambers Infiniti was the rightful owner of each vehicle.

34.     On an unknown date, Smith transferred to Parinejad or Webster Auto a 2004 Hummer H2 (VIN 5GRGN23U14H106389), which had a Kelley Blue Book value of $28,324. Parinejad paid Smith personally $16,000 for this vehicle.  Smith never paid plaintiff.

35.     On an unknown date, Smith transferred to Parinejad or Webster Auto a 2005 Subaru Legacy GT (VIN 4S3BL676054204228), which had a Kelley Blue Book value of $12,648.  Parinejad paid Smith personally $9,400 for this vehicle.  Smith never paid plaintiff.

36.     On an unknown date, Smith transferred to Parinejad or Webster Auto a 2003 Infiniti G35X (VIN JNKCV51E93M016229), which had a Kelley Blue Book value of $11,442. Parinejad paid Smith personally $6,000 for this vehicle.  Smith never paid plaintiff.

37.     On or about December 9, 2011, Smith transferred to Parinejad or Webster Auto a 2002 Infiniti G20 (VIN JNKCP11A62T513100), which had a Kelley Blue Book value of $5,840. Webster Auto paid Smith personally $2,400 for this vehicle.  Smith paid plaintiff $2,589.  On or about December 23, 2011, Webster Auto sold this vehicle to M&J Automotive, Inc. d/b/a M&J Auto Sales & Body, located in Central Falls, Rhode Island.

38.     On or about November 28, 2011, Smith transferred to Parinejad or Webster Auto a 2005 Acura 3.2TL (VIN 19UUA66255A002629), which had a Kelley Blue Book value of

8

$17,440. Parinejad paid Chambers Infiniti directly $9,800 for this vehicle, but Smith was the sales agent on behalf of Chambers Infiniti and without authorization sold this vehicle to Parinejad below market retail rate. When Parinejad and/or Webster Auto resold this vehicle on or about December 16, 2011, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

39.     On or about December 12, 2011, Smith transferred to Parinejad or Webster Auto a 2001 Infiniti I30 (VIN JNKCA31A11T007492), which had a Kelley Blue Book value of $8,963. Webster Auto paid Smith personally $4,700 for this vehicle. Smith paid plaintiff $3,300. When Parinejad and/or Webster Auto resold this vehicle on or about January 12, 2012, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

40.     On or about December 16, 2011, Smith transferred to Parinejad or Webster Auto a 2005 Infiniti FX45 (VIN JNRBS08W15X400546), which had a Kelley Blue Book value of $15,836. Webster Auto paid Smith personally $12,400 for this vehicle. Smith paid plaintiff $11,000. On or about December 16, 2011, Webster Auto sold this vehicle to Valley Auto LLC, located in Matamoras, Pennsylvania.

41.     On or about January 19, 2012, Smith transferred to Parinejad or Webster Auto a 2004 Acura 3.2TL (VIN 19UUA65584A027454), which had a Kelley Blue Book value of $18,375. Webster Auto paid Smith personally $11,000 for this vehicle. Smith paid plaintiff $8,994.

42.     On or about February 4, 2012, Smith transferred to Parinejad or Webster Auto a 2003 Infiniti FX35 (VIN JNRAS08W53X000353), which had a Kelley Blue Book value of

9

$16,648. Webster Auto paid Smith personally $10,300 for this vehicle. Smith paid plaintiff $10,294.

43.     On or about December 31, 2010, Smith transferred to Parinejad or Webster Auto a 2003 Lexus ES300 (VIN JTHBF30G330105298), which had a Kelley Blue Book value of $14,048. Webster Auto paid Smith personally $7,200 for this vehicle. Smith paid plaintiff $6,294. When Parinejad and/or Webster Auto resold this vehicle on or about February 22, 2011, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

44.     On or about March 25, 2011, Smith transferred to Parinejad or Webster Auto a 2004 Infiniti G35X (VIN JNKCV51F74M715806), which had a Kelley Blue Book value of $11,585. Webster Auto paid Smith personally $6,800 for this vehicle. Smith paid plaintiff $5,689. When Parinejad and/or Webster Auto resold this vehicle on or about September 12, 2011, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

45.     On or about May 25, 2012, Smith transferred to Parinejad or Webster Auto a 2001 Nissan Maxima (VIN JN1CA31A71T109982), which had a Kelley Blue Book value of $5,971. Webster Auto paid Smith personally $3,500 for this vehicle. Smith paid plaintiff $3,319. When Parinejad and/or Webster Auto resold this vehicle on or about June 14, 2011, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

46.     On or about June 8, 2011, Smith transferred to Parinejad or Webster Auto a 2003 Infiniti FX45 (VIN JNRBS08W03X404715), which had a Kelley Blue Book value of $14,150. Parinejad paid Smith personally $9,100 for this vehicle. Smith paid plaintiff $8,014.

47.     On or about July 28, 2011, Smith transferred to Parinejad or Webster Auto a 2004 Toyota Camry (VIN 4T1BE32K24U310512), which had a Kelley Blue Book value of $14,485. Webster Auto paid Smith personally $8,400 for this vehicle.  Smith paid plaintiff $10,522.

48.     On or about August 5, 2011, Smith transferred to Parinejad or Webster Auto a 2004 Infiniti FX35 (VIN JNRAS08W04X201353), which had a Kelley Blue Book value of $22,054.  Parinejad paid Chambers Infiniti directly $15,289 for this vehicle, but Smith was the sales agent on behalf of Chambers Infiniti and without authorization sold this vehicle to Parinejad below market retail rate.  When Parinejad and/or Webster Auto resold this vehicle on or about March 23, 2012, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

49.     On or about September 5, 2011, Smith transferred to Parinejad or Webster Auto a 2004 Infiniti FX35 (VIN JNRAS08W14X202611), which had a Kelley Blue Book value of $23,279.  Webster Auto paid Smith personally $15,300 for this vehicle.  Smith paid plaintiff $15,394.

50.     On or about October 11, 2011, Smith transferred to Parinejad or Webster Auto a 2004 Infiniti FX35 (VIN JNRAS08WX4X201358), which had a Kelley Blue Book value of $13,854.  Webster Auto paid Smith personally $15,200 for this vehicle.  Smith paid plaintiff $11,289.  When Parinejad and/or Webster Auto resold this vehicle on or about November 25, 2011, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

51.     On or about March 28, 2011, Smith transferred to Parinejad or Webster Auto a 2001 Toyota 4 Runner (VIN JT3HN86R410353758), which had a Kelley Blue Book value of $12,045.  Webster Auto paid Smith personally $7,200 for this vehicle.  Smith paid plaintiff

11

$6,594. When Parinejad and/or Webster Auto resold this vehicle on or about May 6, 2011, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

52.    On or about June 17, 2011, Smith transferred to Parinejad or Webster Auto a 1999 Honda CRV (VIN JHLRD1864XC014604), which had a Kelley Blue Book value of $7,473. Parinejad paid Chambers Infiniti directly $5,294 for this vehicle, but Smith was the sales agent on behalf of Chambers Infiniti and without authorization sold this vehicle to Parinejad below market retail rate. When Parinejad and/or Webster Auto resold this vehicle on or about December 1, 2011, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

53.    On or about November 9, 2011, Smith transferred to Parinejad or Webster Auto a 2003 BMW M3 (VIN WBSBL93463JR21620), which had a Kelley Blue Book value of $14,885. Webster Auto paid Smith personally $11,100 for this vehicle. Smith paid plaintiff $10,989. When Parinejad and/or Webster Auto resold this vehicle on or about February 27, 2012, they completed title preparation documents and sent them to the Registry of Motor Vehicles by mail.

54.    Smith and Parinejad/Webster Auto did not execute required Purchase and Sale Contracts, Titles or odometer disclosure statements for any of these vehicles.

55.    Plaintiff uncovered the defendants' conspiracy after Parinejad/Webster Auto obtained three vehicles (VINs 5GRGN23U14H106389; 4S3BL676054204228; JNKCV51E93M016229) from Smith, but before Parinejad/Webster Auto could resell them to the public. These three vehicles are currently subject to an injunction preventing their transfer.

56.    In sum, Parinejad and Webster Auto paid discounted wholesale prices directly to Smith for at least 17 vehicles, but received vehicles with Titles in the name of Chambers Infiniti, to whom they did not make payment. Parinejad and Webster Auto conspired with Smith to have

him, on behalf of plaintiff but without plaintiff's authority, sell Parinejad at least 3 vehicles with Parinejad paying discounted wholesale prices directly to plaintiff. Parinejad and Webster Auto then resold these 20 vehicles that they "purchased" at wholesale prices, thereby unlawfully generating a profit for themselves to the detriment of the Chambers Infiniti. Smith profited by paying Chamber Infiniti an amount less than the amount he received personally from Parinejad and/or Webster Auto.

57.    Plaintiff's investigation into the number of vehicles misappropriated by the defendants and the damage caused by their unlawful actions is ongoing.

**f.    Additional Damages Incurred By Plaintiff**

58.    A review of Chambers Infiniti's accounts and video tapes has also revealed that Smith may have stolen the Title to an Infiniti G Coupe that was recently purchased from an individual and intended to be resold by Chambers Infiniti. Smith can be seen on surveillance video moving the vehicle after hours on Friday, April 6, 2012. Neither the keys to this vehicle nor its Title has been located since Smith was fired on April 9, 2012, and he was the last person in possession of the keys. Smith intended on misappropriating this vehicle, but was fired before he had the opportunity to do so.

59.    Smith also misappropriated one of Chambers Infiniti's dealership designated dealership license plates.

**COUNT I:  BREACH OF CONTRACT**
**(Chambers Infiniti v. Smith)**

60.    Chambers Infiniti repeats and re-alleges each and every allegation above as if set forth herein.

61.    Chambers Infiniti and Smith entered into a valid and enforceable employment arrangement pursuant to which Smith was to provide his honest services to the dealership.

13

62.    Smith breached the terms and conditions of his employment arrangement with Chambers Infiniti through his conduct as set forth herein.

63.    As a result, Chambers Infiniti has suffered substantial damages in an amount to be determined at trial.

## COUNT II:  CONVERSION
### (Chambers Infiniti v. Smith, Parinejad, and Webster Auto)

64.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

65.    Chambers Infiniti has lawful title to the vehicles that were unlawfully wholesaled by Smith to Parinejad and Webster Auto.

66.    Smith wholesaled retail vehicles to Parinejad and Webster Auto.  Smith personally received cash or checks made out to him personally in return for the vehicles.

67.    Smith deposited these sums of money into his personal checking account.  By doing so, he converted those funds generated by the sale of these vehicles which belonged to Chambers Infiniti.

68.    Parinejad and Webster Auto, by paying wholesale or discounted prices for vehicles, knowingly defrauded Chambers Infiniti and then sold those vehicles to customers or other used car dealers for significant profits.  Parinejad and Webster Auto deposited these funds, which included profits generated from these sales, into their accounts.  By doing so, Parinejad and Webster Auto converted those funds which belonged to Chambers Infiniti.

69.    Chambers Infiniti made demand on Parinejad and Webster Auto for return of three vehicles that Smith wholesaled to them, but which vehicles have not yet been sold to the general public.  Chambers Infiniti has not been paid for these vehicles (VINs 5GRGN23U14H106389; 4S3BL676054204228; JNKCVV51E93M016229).  Parinejad and

Webster Auto have not returned these vehicles to Chambers Infiniti. Parinejad and Webster Auto Sales have converted these vehicles unlawfully.

70.    As a result, Chambers Infiniti has suffered substantial damages in an amount to be determined at trial.

## COUNT III:  FRAUD
### (Chambers Infiniti v. Smith, Parinejad and Webster Auto)

71.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

72.    Smith created and submitted false Purchase and Sale Contracts to Chambers Infiniti to cover-up the vehicles he misappropriated, sold and transferred to Parinejad and Webster Auto.

73.    Smith, by engaging in unlawful wholesaling to the other defendants, engaged in intentional deceit by making false statements of material fact to Chambers Infiniti or omitting material facts necessary in order to make the statements not misleading with regard to improperly wholesaling vehicles owned by Chambers Infiniti.

74.    Smith knew or recklessly disregarded the falsity of their untrue statements or omissions of material fact.  Smith intended that Chambers Infiniti rely on the falsity of the statements or omissions to continue to allow him to unlawfully wholesale vehicles to the other defendants.  Chambers Infiniti was unaware of the falsity of Smith's representations and justifiably relied on them to its detriment.

75.    Parinejad and Webster Auto supplied personal identification information of individuals, without their permission, to Smith so that he could use that information to create and submit fake Purchase and Sale Contracts to Chambers Infiniti to cover-up the vehicles he misappropriated, sold and transferred to Parinejad and Webster Auto.

76.    Parinejad and Webster Auto wrote checks from Parinejad's personal account to Chambers Infiniti to purchase three vehicles (VINs 19UUA66255A002629; JNRAS08W04X201353; JHLRD1864XC014604) from Chambers Infiniti.  Parinejad and Webster Auto did this because they knew Chambers Infiniti does not wholesale vehicles to other used car dealers, and to conceal the fact that Webster Auto was the actual purchaser of the vehicles which thereafter sold the vehicles to the general public.

77.    Parinejad and Webster Auto, by engaging in unlawful wholesaling with Smith, engaged in intentional deceit by making or facilitating Smith's false statements of material fact or omitting material facts necessary in order to make the statements not misleading with regard to re-selling vehicles that they had unlawfully purchased from Smith.

78.    Parinejad and Webster Auto knew or recklessly disregarded the falsity of their untrue statements or omissions of material fact.  They intended others, including without limitation Chambers Infiniti and customers to whom they sold these vehicles, to rely on the falsity of the statements or omissions to allow them to re-sell these vehicles.  Others, including without limitation Chambers Infiniti and customers who purchased these vehicles, justifiably relied on defendants to the detriment of Chambers Infiniti.

79.    As a direct and proximate result of the defendants' material misrepresentations and omissions, Chambers Infiniti has been damaged in an amount to be determined at trial.

### COUNT IV: CONSPIRACY
### (Chambers Infiniti v. Smith, Parinejad and Webster Auto)

80.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

81.    Parinejad, Webster Auto and Smith agreed on a common purpose or scheme to misappropriate vehicles from Chambers Infiniti for their own benefit.

16

82.    Smith unlawfully wholesaled vehicles to Parinejad and Webster Auto in violation of Chambers Infiniti's corporate policy.

83.    Parinejad and Webster Auto unlawfully purchased these wholesaled vehicles from Smith, knowing it was improper for them to do so, and then resold these vehicles to customers and others at higher markup prices.

84.    The actions of Smith, Parinejad and Webster Auto were part of a common and agreed upon unlawful scheme to purchase discounted vehicles at wholesale prices, and to then sell them to customers and others for profit for their own benefit and to the detriment of Chambers Infiniti.

85.    Each defendant knew that the other defendants' actions constituted a breach of duty and/or violation of law, but nonetheless substantially assisted, aided, abetted and encouraged each other's actions as part of a common agreement to commit a tortious act.

86.    As a direct and proximate result of the defendants' concerted actions, Chambers Infiniti has been damaged in an amount to be determined at trial.

## COUNT V:  BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
### (Chambers Infiniti v. Smith)

87.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

88.    Smith was a General Sales Manager at Chambers Infiniti when he conspired with Parinejad and Webster Auto to misappropriate, sell and transfer them vehicles owned by Chambers Infiniti.

89.    Smith was placed in a position of trust and confidence to faithfully perform the duties and responsibilities of his position.

90.     Smith breached his fiduciary duty and/or duty of loyalty to Chambers Infiniti through his actions/omissions alleged above including, without limitation, wholesaling vehicles to Parinejad and Webster Auto to the detriment of Chambers Infiniti.

91.     Defendant Smith's breaches of fiduciary duty and/or the duty of loyalty have caused Chambers Infiniti significant damages which Chambers Infiniti will prove at trial.

## COUNT VI:  BREACH OF GOOD FAITH AND FAIR DEALING
### (Chambers Infiniti v. Smith)

92.     Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

93.     Every contract contains an implied covenant of good faith and fair dealing.

94.     As a result of Smith's employment arrangement with Chambers Infiniti, Smith owed Chambers Infiniti an implied duty of good faith and fair dealing.

95.     Smith breached his duty of good faith and fair dealing to Chambers Infiniti through his actions/omissions alleged above including, without limitation, wholesaling vehicles to Parinejad and Webster Auto to the detriment of Chambers Infiniti.

96.     Smith's breach of duty of good faith and fair dealing caused Chambers Infiniti significant damages which Chambers Infiniti will prove at trial.

## COUNT VII:  AIDING AND ABETTING
### (Chambers Infiniti v. Parinejad and Webster Auto)

97.     Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

98.     Parinejad and Webster Auto had actual knowledge of Smith's breaches of duties to Chambers Infiniti, as described above, and provided substantial assistance and encouragement to Smith in committing those breaches.

18

99.     Parinejad and Webster Auto had actual knowledge of the falsified Purchase and Sale Contracts that Smith created and submitted to Chambers Infiniti, and in fact supplied Smith with personal identification information of individuals without their permission to enable Smith to compete the falsified Purchase and Sale Contracts.

100.    These actions have caused Chambers Infiniti to suffer damages for which it is entitled to recover in an amount which Chambers Infiniti will prove at trial.

### COUNT VIII: TORTIOUS INTERFERENCE
**(Chambers Infiniti v. Parinejad and Webster Auto)**

101.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

102.    Smith and Chambers Infiniti were parties to a valid and enforceable employment arrangement.

103.    Parinejad and Webster Auto knew about the employment arrangement between Smith and Chambers Infiniti.

104.    By engaging in the acts and conduct described above, Parinejad and Webster Auto intended to induce Smith into breaching the terms and conditions of his employment with Chambers Infiniti.

105.    Parinejad and Webster Auto were not privileged to induce Smith into breaching the terms and conditions of his employment with Chambers Infiniti.

106.    As described above, Smith breached the terms and conditions of his employment with Chambers Infiniti.

107.    At all relevant times, Chambers Infiniti sold used cars to the general public and made a financial profit from those transactions.

108.     Parinejad and Webster Auto knew about the business relationship or at least the contemplated business relationship between Chambers Infiniti and its customers or prospective customers.

109.     Parinejad and Webster Auto intentionally and maliciously interfered with that business relationship by its conduct and actions described above.

110.     These actions have caused Chambers Infiniti to suffer damages in an amount which Chambers Infiniti will prove at trial.

## COUNT IX: VIOLATION OF G.L. c. 93A
### (Chambers Infiniti v. Smith, Parinejad and Webster Auto)

111.     Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

112.     Smith, by selling and profiting from the vehicles misappropriated from Chambers Infiniti, was also engaged in trade or commerce in Massachusetts within the meaning of G.L. c. 93A.

113.     Smith, as the General Sales Manager at Chambers Infiniti, was placed in a position of trust and confidence, both of which he breached.

114.     Parinejad and Webster Auto at all relevant times were engaged in trade or commerce in Massachusetts within the meaning of G.L. c. 93A.

115.     The actions and omissions of Smith, Parinejad and Webster Auto as set forth above constitute unfair and deceptive acts or practices in violation of G.L. c. 93A, sections 2 and 11. Their participation in misappropriating vehicles from Chambers Infiniti, aiding and abetting Smith's breaches of duties and violations of law, and the conspiracy among and between them, constitute a c. 93A violation.

116.    The actions and omissions of Smith, Parinejad and Webster Auto constitute unfair competition in violation of G.L. c. 93A, sections 2 and 11.

117.    These actions and omissions of Smith, Parinejad and Webster Auto were committed knowingly and willfully, and constitute bad faith violations of G.L. c. 93A.

118.    As a result of the acts and practices described above, which were committed knowingly and willfully, Chambers Infiniti has sustained damages in an amount it will prove at trial.

### COUNT X:  CIVIL RICO IN VIOLATION OF 18 U.S.C. §1962(a)
### (Chambers Infiniti v. Smith, Parinejad and Webster Auto)

119.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

120.    Smith, Parinejad and Webster Auto at all relevant times were persons as defined by 18 U.S.C. §1961(3).

121.    Smith, Parinejad and Webster Auto at all relevant times were principals within the meaning of 18 U.S.C. §2.

122.    Webster Auto at all relevant times was an enterprise as defined by 18 U.S.C. §1961(4).

123.    Smith, Parinejad and Webster Auto at all relevant times combined to form an enterprise (the "Smith Enterprise") as defined by 18 U.S.C. §1961(4).

124.    Smith, Parinejad and Webster Auto each engaged in a pattern of racketeering activity, as defined by 18 U.S.C. §§1961(1) and (5), from December 2010 through April 2012. This pattern of racketeering activity includes, but is not limited to, the following:

21

**Transportation of stolen vehicles (18 U.S.C. §2312)**

a.      Parinejad and Webster Auto sold and transported at least 2 vehicles outside Massachusetts within a two (2) year period.  *See* ¶¶37, 40, supra.

b.      Parinejad and Webster Auto knew that each vehicle had been stolen from Chambers Infiniti at the time of transport.

c.      Smith, by unlawfully selling and transferring these vehicles to Parinejad and Webster Auto, facilitated the transportation of these vehicles outside Massachusetts.

d.      Smith knew that each vehicle had been stolen from Chambers Infiniti at the time of transport.

e.      Each vehicle that was transported outside Massachusetts constitutes a separate and distinct act of racketeering activity.

**Transportation of stolen goods (18 U.S.C. §2314)**

f.      Parinejad and Webster Auto sold and transported at least 2 vehicles, each of a value greater than $5,000, outside Massachusetts within a two (2) year period.  *See* ¶¶37, 40, supra.

g.      Parinejad and Webster Auto knew that each vehicle had been stolen, converted or taken by fraud from Chambers Infiniti at the time of transport.

h.      Smith, by unlawfully selling and transferring these vehicles to Parinejad and Webster Auto, facilitated the transportation of these vehicles outside Massachusetts.

i.      Smith knew that each vehicle had been stolen, converted or taken by fraud from Chambers Infiniti at the time of transport.

j.      Each vehicle that was transported outside Massachusetts constitutes a separate and distinct act of racketeering activity.

**Extortion, threats, intimidation and economic duress**

k.      In December 2010, Parinejad, after having loaned Smith money which Smith could not repay, forced and/or threatened Smith to enter into the conspiracy with him and Webster Auto to misappropriate vehicles from Chambers Infiniti, and to then resell them at a profit.

l.      Forcing and/or threatening Smith to enter into the conspiracy was an act of racketeering activity.

**Fraud and related activity in connection with identification (18 U.S.C. §1028)**

m.      Parinejad and Webster Auto provided Smith with names and drivers licenses of individuals without their authority so that Smith could use that information to create and submit fabricated Purchase and Sale Contracts to Chambers Infiniti to cover-up the transfer of the vehicles to Parinejad/Webster Auto.

n.      Smith personally obtained names and drivers licenses of individuals without their authority so that he could use that information to create and submit fabricated Purchase and Sale Contracts to Chambers Infiniti to cover-up the transfer of the vehicles to Parinejad/Webster Auto.

o.      Parinejad, Webster Auto and Smith knew that these pieces of identification were stolen or produced without authority.

p.      The creation and submission of the fabricated Purchase and Sale Contracts to Chambers Infiniti was done to aid and abet, and in connection with, the conspiracy to misappropriate vehicles from Chambers Infiniti and to sell them to Parinejad and Webster Auto.

q.    Each wrongfully procured piece of identification constitutes a separate and distinct act of racketeering activity.

**Making extortionate extensions of credit (18 U.S.C. §892)**

r.    Parinejad made an extortionate extension of credit to Smith when he loaned Smith money in December 2010.

s.    At that time, they understood that delay in making repayment or failure to make repayment could result in the use of criminal means to cause harm to Chambers Infiniti.

t.    Parinejad's extortionate extension of credit to Smith was an act of racketeering activity.

**Financing extortionate extensions of credit (18 U.S.C. §893)**

u.    Webster Auto advanced money to Parinejad, who in turn made an extortionate extension of credit to Smith when Parinejad loaned Smith money in December 2010.

v.    At that time, Webster Auto knew, vis-à-vis Parinejad, that the money was advanced for the purpose of making an extortionate line of credit to Smith.

w.    Webster Auto's advancement of the money to Parinejad was an act of racketeering activity.

**Mail fraud (18 U.S.C. §1341)**

x.    Parinejad and Webster Auto conspired with Smith to misappropriate vehicles from Chambers Infiniti so that Parinejad/Webster Auto could unlawfully obtain these vehicles at discount prices and then resell them to the general public at a greater profit.

y.    When Parinejad and Webster Auto resold a vehicle to a customer in the general public, Parinejad and Webster Auto also sent the vehicle's Title, Certificate of

Registration and the appropriate fees to the Registry of Motor Vehicles so that the vehicle could be properly titled and registered. *See* ¶¶38-39, 43-45, 48, 50-53.

z.     Parinejad and Webster Auto sent these materials to the Registry of Motor Vehicles by mail. *See* ¶¶38-39, 43-45, 48, 50-53.

aa.     Each instance Parinejad and Webster Auto sent these materials in the mail constitutes a separate and distinct act of racketeering activity.

**Interference with commerce (18 U.S.C. §1951)**

bb.     Parinejad, Webster Auto and Smith conspired to misappropriate vehicles from Chambers Infiniti so that Parinejad/Webster Auto could unlawfully obtain these vehicles at discount prices and then resell them resulting in profits to Parinejad, Webster Auto and Smith.

cc.     Parinejad and Webster Auto accomplished these activities in part by extorting or attempting to extort Smith.

dd.     Parinejad and Webster Auto extorted or attempted to extort Smith in furtherance of a plan or purpose to misappropriate the vehicles from Chambers Infiniti.

ee.     The actions of Parinejad, Webster Auto and Smith obstructed, delayed or affected commerce.

ff.     The actions of Parinejad, Webster Auto and Smith obstructed, delayed or affected the movement of the vehicles that were misappropriated from Chambers Infiniti.

gg.     Each vehicle that was misappropriated from Chamber Infiniti obstructed, delayed or affected commerce, and each misappropriated vehicle therefore constitutes an independent act of racketeering activity.

**Interstate activities in aid of racketeering enterprises (18 U.S.C. §1952)**

hh.     Parinejad, Webster Auto and Smith conspired to misappropriate vehicles from Chambers Infiniti so that Parinejad/Webster Auto could unlawfully obtain these vehicles at discount prices and then resell them resulting in profits to Parinejad, Webster Auto and Smith.

ii.     When Parinejad and Webster Auto resold a vehicle to a customer in the general public, Parinejad and Webster Auto sent the vehicle's Title, Certificate of Registration and the appropriate fees to the Registry of Motor Vehicles so that the vehicle could be properly titled and registered.

jj.     Parinejad and Webster Auto sent these materials to the Registry of Motor Vehicles by mail.

kk.     This enabled Parinejad, Webster Auto and Smith to manage, establish, and carry on their unlawful activity, including without limitation extortion (as described above) and violation of 18 U.S.C. §1957 (as further described below).

ll.     Each instance Parinejad and Webster Auto sent these materials in the mail constitutes a separate and distinct act of racketeering activity.

**Engaging in monetary transactions in property derived from unlawful activity (18 U.S.C. §1957)**

mm.     Parinejad and Webster Auto purchased and resold vehicles that had been misappropriated from Chambers Infiniti to customers in the United States.

nn.     Parinejad and Webster Auto deposited the proceeds of these sales into their bank accounts.

oo.     Parinejad and Webster Auto sell vehicles outside Massachusetts and are therefore involved in interstate commerce.

pp.     Depositing the proceeds of these sales into Parinejad's and Webster Auto's bank accounts affected interstate commerce.

qq.     At least sixteen (16) of these vehicles that were misappropriated from Chambers Infiniti and resold by Parinejad and Webster Auto had a value greater than $10,000. *See* ¶¶34-36, 38, 40-44, 46-51, 53, supra.

rr.     Smith sold vehicles that had been misappropriated from Chambers Infiniti to Webster Auto and Parinejad in the United States.

ss.     Smith deposited the proceeds of these sales into his bank accounts.

tt.     Depositing the proceeds of these sales into Smith's bank accounts allowed him to subsequently payback, at least in part, Chambers Infiniti which affected interstate commerce because it allowed him, Parinejad and Webster Auto to continue their conspiracy.

uu.     At least sixteen (16) of these vehicles that were misappropriated from Chambers Infiniti, sold by Smith to Parinejad/Webster Auto, and then resold by Webster Auto had a value greater than $10,000. *See* ¶¶34-36, 38, 40-44, 46-51, 53, supra.

vv.     Each vehicle was procured from a racketeering activity as described herein.

ww.     Each monetary transaction outlined above constitutes an independent act of racketeering activity.

125.     Parinejad and Webster Auto received income from the pattern of racketeering activity described above when they resold the vehicles they misappropriated from Chambers Infiniti.

27

126.   Smith received income from the pattern of racketeering activity described above when he paid Chambers Infiniti less than the amount Parinejad and Webster Auto paid Smith personally.

127.   Parinejad and Webster Auto used or invested, directly or indirectly, income or proceeds of such income in the establishment or operation of Webster Auto and the Smith Enterprise by depositing payments from the resale of the vehicles that had been misappropriated from Chambers Infiniti. Parinejad and Webster Auto would then use that income or the proceeds of that income to purchase more vehicles from Smith personally, who would misappropriate them from Chambers Infiniti.

128.   Smith used or invested, directly or indirectly, income or proceeds of such income in the establishment or operation of Webster Auto and the Smith Enterprise by using such income to pay back Chambers Infiniti, albeit not at the full amount, for the vehicles he misappropriated.

129.   Webster Auto, which is located in Massachusetts, is engaged in interstate commerce or conducts activity that affects interstate commerce because it buys and sells vehicles outside Massachusetts.

130.   The Smith Enterprise, based in Massachusetts, is engaged in interstate commerce or conducts activity that affects interstate commerce because it buys and sells vehicles outside Massachusetts.

131.   These actions have caused Chambers Infiniti to suffer damages for which it is entitled to recover in an amount which Chambers Infiniti will prove at trial.

28

## COUNT XI:  CIVIL RICO IN VIOLATION OF 18 U.S.C. §1962(b)
### (Chambers Infiniti v. Smith, Parinejad and Webster Auto)

132.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

133.    Smith, Parinejad and Webster Auto at all relevant times were persons as defined by 18 U.S.C. §1961(3).

134.    Webster Auto at all relevant times was an enterprise as defined by 18 U.S.C. §1961(4).

135.    Smith, Parinejad and Webster Auto at all relevant times combined to form the Smith Enterprise, as defined by 18 U.S.C. §1961(4).

136.    Smith, Parinejad and Webster Auto each engaged in a pattern of racketeering activity, as defined by 18 U.S.C. §§1961(1) and (5), from December 2010 through April 2012. This pattern of racketeering activity includes, but is not limited to, the activities described above in ¶124, supra, and all subparagraphs thereto.

137.    The pattern of racketeering activity described above allowed Parinejad to acquire or maintain, directly or indirectly, interest in or control of Webster Auto and the Smith Enterprise.

138.    The pattern of racketeering activity described above allowed Webster Auto to acquire or maintain, directly or indirectly, interest in or control of the Smith Enterprise.

139.    The pattern of racketeering activity described above allowed Smith to acquire or maintain, directly or indirectly, interest in or control of Webster Auto and the Smith Enterprise.

140.    Webster Auto, which is located in Massachusetts, is engaged in interstate commerce or conducts activity that affects interstate commerce because it buys and sells vehicles outside of Massachusetts.

141.    The Smith Enterprise, based in Massachusetts, is engaged in interstate commerce or conducts activity that affects interstate commerce because it buys and sells vehicles outside of Massachusetts.

142.    These actions have caused Chambers Infiniti to suffer damages for which it is entitled to recover in an amount which Chambers Infiniti will prove at trial.

## COUNT XII:  CIVIL RICO IN VIOLATION OF 18 U.S.C. §1962(c)
### (Chambers Infiniti v. Smith, Parinejad and Webster Auto)

143.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

144.    Smith, Parinejad and Webster Auto at all relevant times were persons as defined by 18 U.S.C. §1961(3).

145.    Webster Auto at all relevant times was an enterprise as defined by 18 U.S.C. §1961(4).

146.    Smith, Parinejad and Webster Auto at all relevant times combined to form the Smith Enterprise, as defined by 18 U.S.C. §1961(4).

147.    Parinejad at all relevant times was associated with Webster Auto and the Smith Enterprise.

148.    Webster Auto at all relevant times was associated with the Smith Enterprise.

149.    Smith at all relevant times was associated with Webster Auto and the Smith Enterprise.

150.    Webster Auto, which is located in Massachusetts, is engaged in interstate commerce or conducts activity that affects interstate commerce because it buys and sells vehicles outside of Massachusetts.

151.    The Smith Enterprise, based in Massachusetts, is engaged in interstate commerce or conducts activity that affects interstate commerce because it buys and sells vehicles outside of Massachusetts.

152.    Parinejad acted or participated, directly or indirectly, in the conduct of Webster Auto's and the Smith Enterprise's affairs through a pattern of racketeering activity described above in ¶124, supra, and all subparagraphs thereto.

153.    Smith acted or participated, directly or indirectly, in the conduct of Webster Auto's and the Smith Enterprise's affairs through a pattern of racketeering activity described above in ¶124, supra, and all subparagraphs thereto.

154.    Webster Auto acted or participated, directly or indirectly, in the conduct of the Smith Enterprise's affairs through a pattern of racketeering activity described above in ¶124, supra, and all subparagraphs thereto.

155.    These actions have caused Chambers Infiniti to suffer damages for which it is entitled to recover in an amount which Chambers Infiniti will prove at trial.

### COUNT XIII:  CIVIL RICO IN VIOLATION OF 18 U.S.C. §1962(d)
### (Chambers Infiniti v. Smith, Parinejad and Webster Auto)

156.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

157.    Parinejad, Webster Auto and Smith entered into an agreed upon scheme to misappropriate vehicles from Chambers Infiniti at wholesale prices to that they could profit from the resale of these vehicles instead of Chambers Infiniti.

158.    Parinejad, Webster Auto and Smith conspired to violate 18 U.S.C. §§1962(a-c).

31

WHEREFORE, Herb Chambers 1186, Inc. d/b/a Herb Chambers Infiniti of Boston, requests that this Court grant the following relief:

i.  Enter judgment in its favor on all counts of the respective claims for relief as set forth in the Amended Complaint above, with accompanying damages awarded in an amount to be proven at trial under applicable statutory and/or common law;

ii.  Treble damages and award attorneys' fees in accordance with Massachusetts common law, G.L. c. 93A and 18 U.S.C. §1964(c).

iii.  Award pre- and post-judgment interest as allowed by law;

iv.  Award recoverable costs associated with this lawsuit; and

v.  Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Herb Chambers 1186, Inc. d/b/a Herb Chambers Infiniti of Boston demands a jury trial on all claims so triable.

Respectfully Submitted,

HERB CHAMBERS 1186, INC. d/b/a
HERB CHAMBERS INFINITI OF BOSTON,

By its Attorneys,

Howard M. Cooper (BBO # 543842)
hcooper@toddweld.com
Ian J. Pinta (BBO # 667812)
ipinta@toddweld.com
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: July 2, 2013

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on ___ 7/2/13 ___

32

EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:                                    SUPERIOR COURT DEPARTMENT
                                               OF THE TRIAL COURT

HERB CHAMBERS 1186, INC. d/b/a          )
HERB CHAMBERS INFINITI OF BOSTON,       )
                                        )
         Plaintiff,                     )
                                        )          C.A. No. 12-1515B
         v.                             )
                                        )
DONALD A. SMITH, JR., PRESTIGE AUTO     )
IMPORTS, INC. d/b/a WEBSTER AUTO        )
SALES, REZA PARINEJAD, OLYMPICS         )
TOWING, INC. and GENANE G. CASTRO,      )
                                        )
         Defendants,                    )
                                        )
         v.                             )
                                        )
BANK OF AMERICA                         )
                                        )
         Trustee Process Defendant.     )

## AFFIDAVIT OF DONALD A. SMITH, JR.

I, Donald A. Smith, Jr., do hereby depose and state as follows:

1.    I make this affidavit upon my personal knowledge unless otherwise stated herein.

2.    I am a defendant in the above-captioned matter.

3.    I am a former General Sales Manager of Herb Chambers 1186, Inc. d/b/a Herb
Chambers Infiniti of Boston ("Chambers Infiniti").

4.    Reza Parinejad ("Parinejad") is the owner and operator of Prestige Auto Imports,
Inc. d/b/a Webster Auto Sales ("Webster Auto"). I have known Parinejad for approximately 15
years and have worked on and off for him at either Webster Auto and/or his other used-car

1

dealership, Great Road Auto Imports ("Great Road"). Upon information and belief, Great Road is no longer in business.

     5.    Towards the end of 2010, I began experiencing serious financial difficulties. I requested and received financial loans from Parinejad. He loaned me $900 on November 30, 2010. I reimbursed him $300 on December 10, 2010, and another $300 on December 18, 2010. I believe that I paid him the additional $300 as well. He loaned me an additional $2,000 on December 22, 2010.

     6.    At or around this time he approached me with an alternative way to repay the money he had loaned to me. He proposed that I sell him used vehicles from Chambers Infiniti's inventory at discounted rates so that he could then resell them through his used-car dealership(s) at retail rates. I agreed.

     7.    Our plan included the following:

       a.  I provide him with the original Certificate of Title ("Title") for each vehicle with the purchaser and the odometer box portions in the next "Re-Assignment by Licensed Dealer" section empty. Parinejad would then write in Webster Auto's name as the purchaser on the back of the Title to make it look like a valid dealer-to-dealer transfer. We agreed to do this despite us both knowing that Chambers Infiniti had a specific policy that prevented Chambers Infiniti from selling or transferring vehicles to used-car dealers.

       b.  Parinejad would pay me personally an amount for each vehicle that he determined. These amounts were far below wholesale and retail market rates for these vehicles.

c.   At a later date, to conceal my misappropriation of the vehicle and sale to
Parinejad, I would then create a fake Purchase Sale Contract showing the sale of
the vehicle to a purportedly legitimate purchaser. At times, Mr. Parinejad would
provide me with names and driver's licenses of purported legitimate purchasers. I
would also enter this fake purchaser's name on the back of the copied Title for
Chambers Infiniti's records. I would pay Chambers Infiniti an amount that I
determined and indicated on the fake Purchase Sale Contract.   I was able to
make some modest profit and simultaneously cancel my debt with Mr. Parinejad.

8.     With regard to the transfer of vehicles to Parinejad, we did not execute Purchase
Sale Contracts, Titles and odometer disclosure statements as required by Massachusetts law so
that Chambers Infiniti and the Registry of Motor Vehicles would not discover what we were
doing.

9.     I do not recall the exact number of or the particular vehicles that were involved in
our scam, but I recall Parinejad acquiring approximately 20 vehicles in the manner described
above.

10.     To the best of my knowledge, none of the vehicles Parinejad acquired under our
scam had been designated to be transferred to the auction, but the ultrahigh mileage vehicles
would have likely gone through the auction, whereas the others, notably the Infiniti FX models
and the Hummer, were suitable units for retail at Chambers Infiniti. He cherry picked the
vehicles at Chambers Infiniti that suited his needs so that he could generate a larger profit when
he resold them to the public.

11.     Mr. Parinejad knew that Chambers Infiniti did not wholesale cars to other used-car dealers because he had previously illegitimately purchased vehicles at Toyota of Boston using employee names in a similar fashion.

12.     I never told Parinejad that Chambers Infiniti had an employee purchase program that allowed employees to purchase vehicles from the dealership and then resell them. Chambers Infiniti does not have such a program. Chambers did have a program whereby an employee could purchase up to 2 vehicles per year for personal use.

13.     Earlier in the above-captioned matter, Parinejad's counsel prepared and filed affidavits from me.

14.     The first affidavit, dated April 23, 2012, bears my signature but I did not review it before signing.

    a.  The statement in paragraph 2 which reads, "I told Reza Parinejad that I could sell him vehicles that I purchased from Chambers under my employee's program," is false. I never told him that. Mr. Parinejad knew there was no such program as he had previously illegitimately purchased used vehicles at Toyota of Boston under employee names from Sales Mgr. John Carlyle and Sales Associate Anderson Villefrance. On information and belief, Mr. Villefrance now works for Webster Auto Sales.

    b.  The statement in paragraph 5 which reads, "I never informed Mr. Parinejad that I had no right to sell these vehicles, or that I was defrauding the plaintiff, or anything to indicate that my transactions with him were anything other than bona fide," is false. I told him that I could not legitimately sell him vehicles because he

4

was a used-car dealer and that Chambers Infiniti had a policy against wholesaling cars to other used-car dealers. He told me that he already knew this.

c.  The statement in paragraph 6 which reads, "Mr. Parinejad was not involved in any fraud, conspiracy, or any other wrongful act as alleged by the plaintiff," is false. We agreed that I would secretly misappropriate used vehicles from Chambers Infiniti and then in turn sell them to Parinejad at discounted prices so that he could then resell them to the public at retail prices and I could make some money too.

d.  The statement in paragraph 6 which reads, "Instead, [Parinejad] was a good faith purchaser of these vehicles and paid fair wholesale value for them," is false. Parinejad was not a good faith purchaser because I told him and, upon information and belief, he understood that I could not buy and resell him vehicles with the consent of my employer. Parinejad did not always pay market value for these vehicles. However, all these transactions left him with vehicles that had significant profit potential.

15.  The second affidavit, dated April 30, 2012, was also prepared by Parinejad's counsel. It bears my signature, but I did not review it before signing.

a.  The statements in paragraph 1 concerning the condition of the vehicles are false. Upon information and belief, the ultrahigh mileage vehicles likely would have gone through the auction, but the others, notably the Infiniti FX models and the Hummer could have been sold at retail by Chambers Infiniti had Parinejad not secretly acquired them.

5

b.  Concerning the statements in paragraph 2, I can neither confirm nor deny the truth or accuracy of those statements.

16.  On March 22, 2013, I appeared at the offices of Todd & Weld, LLP for my deposition (which did not take place on that day).  In the presence of my attorney, Stephen Gill, I informed Bradford Gomes, who was there on behalf of Chambers Infiniti, and Ian J. Pinta, attorney for Chambers Infiniti, that Parinejad was in on the scam the entire time, and that it was Parinejad's suggestion that I sell him used vehicles.

17.  In the presence of my attorney, I informed Mr. Gomes and Mr. Pinta that Parinejad knew that Chambers Infiniti did not wholesale vehicles to other dealers and that Parinejad knew that Chambers Infiniti did not have a program that allowed employees to purchase vehicles and then resell them.  He knew these things as shown by his actions in the past whereby he illegitimately purchased vehicles at Toyota of Boston under employee names.

18.  In the presence of my attorney, I informed Mr. Gomes and Mr. Pinta that Parinejad has improperly acquired vehicles under similar arrangements with other employees of the plaintiff.  I told them that Parinejad improperly acquired vehicles from plaintiff's Toyota dealership by certain arrangements he had with John Carlysle and Anderson Villefrance, and from plaintiff's Honda dealership by certain arrangements he had with Jason O'Brien.  I overheard multiple conversations that Parinejad had with these individuals when they discussed improperly transferring vehicles to Parinejad.  There may be others as well.

19.  In the presence of my attorney, I informed Mr. Gomes and Mr. Pinta that Parinejad has improperly acquired vehicles from other dealerships, including but not limited to Honda Village, Cityside Subaru, and Chelmsford Auto.

6

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 2th DAY OF
April, 2013.

_____
Donald A. Smith, Jr.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

HERB CHAMBERS 1186, INC. d/b/a
HERB CHAMBERS INFINITI OF BOSTON,

    Plaintiff,

    v.

DONALD A. SMITH, JR., PRESTIGE AUTO
IMPORTS, INC. d/b/a WEBSTER AUTO
SALES, REZA PARINEJAD, OLYMPICS
TOWING, INC. and GENANE G. CASTRO,

    Defendants,

    v.

BANK OF AMERICA

    Trustee Process Defendant.

C.A. No. 12-1515B

ORAL ARGUMENT REQUESTED

Notice sent
6/28/2013
G. G. C.
H.M. C.
T. & W.
I. J. P.
S. J. G.
C. & C.
S. K.
K. & K.
D. J. P.
B.,D.,L.,T. & G.
M. J. Mc.

(sc)

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE VERIFIED COMPLAINT BASED UPON NEWLY DISCOVERED FRAUD

Pursuant to Mass. R. Civ. P. 15(a), Plaintiff Herb Chambers 1186, Inc. d/b/a Herb

Chambers Infiniti of Boston hereby moves for leave to amend the Verified Complaint to (i)

dismiss defendants Ganane G. Castro and Olympics Towing, Inc. as parties from this action, (ii)

add additional allegations against all defendants as a result of recently discovered evidence of

fraud, and (iii) add additional counts against all defendants as a result of the recently discovered

evidence.  Plaintiff did not have the benefit of this newly discovered evidence when it filed its

initial complaint in this matter, and the proposed Amended Complaint accounts for this

1

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                              SUPERIOR COURT

HERB CHAMBERS 1186, INC. d/b/a                )
HERB CHAMBERS INFINITI OF BOSTON             )
                                              )
            Plaintiff                         )          C.A. NO. 2012 – 1515B
                                              )
      v.                                      )
                                              )
DONALD A. SMITH, JR., PRESTIGE AUTO           )
IMPORTS, INC. d/b/a WEBSTER AUTO SALES,       )
REZA PARINEJAD, OLYMPICS TOWING, INC.         )
and GENANE G. CASTRO,                         )
                                              )
            Defendants                        )

## JOINT MOTION TO EXTEND
## DISCOVERY AND SUMMARY JUDGMENT DEADLINES

Pursuant to Superior Court Standing Order 1-88, plaintiff Herb Chambers 1186, Inc.

d/b/a Herb Chambers Infiniti of Boston and defendants Donald A. Smith, Jr., Prestige Auto

Imports, Inc. d/b/a Webster Auto Sales, Reza Parinejad, Olympics Towing, Inc. and Genane

Castro jointly move to extend the current discovery deadline from June 14, 2013 to October 25,

2013, and the deadline to serve summary judgment motions until November 25, 2013.

In support of this joint motion, the parties state as follows:

1.      Plaintiff filed this action on or about April 20, 2012.  This is a complicated action

involving numerous parties and multiple counts asserted among them.

2.      The parties have engaged in written discovery and noticed multiple depositions.

Due to various scheduling conflicts of both witnesses and counsel, and certain defendants

retaining new legal counsel, the parties have not yet completed depositions.  To date, only one

deposition (defendant Parinejad) has taken place and written discovery has not been completed.

**NOTIFY** 32

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:      SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

HERB CHAMBERS 1186, INC. d/b/a )
HERB CHAMBERS INFINITI OF BOSTON, )
     )
     Plaintiff, )
     ) C.A. No. 12-1515B
     v. ) Notice sent
     ) 4/18/2013
DONALD A. SMITH, JR., PRESTIGE AUTO ) I. J. P.
IMPORTS, INC. d/b/a WEBSTER AUTO ) T. & W.
SALES, REZA PARINEJAD, OLYMPICS ) S. J. G.
TOWING, INC. and GENANE G. CASTRO, ) C. & C.
     ) S. K.
     Defendants, ) K. & K.
     ) G. G. C.
     ) H. M. C.
              (sc)

## PLAINTIFF'S *EX PARTE* RENEWED MOTION FOR PRE-JUDGMENT REAL ESTATE ATTACHMENT AND TEMPORARY RESTRAINING ORDER

Pursuant to Massachusetts Rules of Civil Procedure 4.1 and 65, plaintiff Herb Chambers

1186, Inc. d/b/a Herb Chambers Infiniti of Boston ("Chambers Infiniti") hereby respectfully

moves ex parte and on an emergency basis for the following pre-judgment security: (1) real

estate attachment in the amount of $634,043 against defendant Reza Parinejad ("Defendant

Parinejad"); (2) an order freezing any and all assets of Defendant Parinejad, other than for

ordinary living expenses; and (3) an order freezing any and all assets of defendant Prestige Auto

Imports, Inc. d/b/a Webster Auto Sales ("Defendant Webster Auto Sales"), other than for

expenses incurred in the ordinary course of business.

As set forth in the Verified Complaint, this action arises from an illegal and fraudulent

scheme orchestrated by Defendants Parinejad and Webster Auto Sales with Donald A. Smith, Jr.

("Defendant Smith"), a former employee of Chambers Infiniti, who together conspired to

1

COMMONWEALTH OF MASSACHUSETTS 

SUFFOLK, ss:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Notice sent
4/18/2013
to all parties
(see P#32)

(sc)

HERB CHAMBERS 1186, INC. d/b/a
HERB CHAMBERS INFINITI OF BOSTON,

      Plaintiff,

    v.

DONALD A. SMITH, JR., PRESTIGE AUTO
IMPORTS, INC. d/b/a WEBSTER AUTO
SALES, REZA PARINEJAD, OLYMPICS
TOWING, INC. and GENANE G. CASTRO,

      Defendants,

C.A. No. 12-1515B

## ORDER

After an *ex parte* hearing on April __17__, 2013, on plaintiff Herb Chambers 1186, Inc.

d/b/a Herb Chambers Infiniti of Boston's ("Chambers Infiniti") *Ex Parte* Renewed Motion for

Real Estate Attachment and Temporary Restraining Order, this Court finds that there is a

reasonable likelihood that Chambers Infiniti will recover judgment, including interest and costs,

in an amount equal to or greater than $~~$634,842~~ $607,000.00 against defendants Reza Parinejad ("Defendant

Parinejad") and Prestige Auto Imports, Inc. d/b/a Webster Auto Sales ("Defendant Webster Auto

Sales") in the above-captioned matter.  The Court further finds that there is a clear danger that

Defendants Parinejad and Webster Auto Sales, if notified in advance of this requested relief, will

convey their real property and assets, remove them from the state or conceal them.

Accordingly, the Court hereby orders the following:

1

Notice sent
4/18/2013

1. The entry of a writ of attachment in the amount of $634,043 on Defendant Parinejad's (sc) real property located at 78 Truman Road, Newton, Massachusetts (Quitclaim Deed at Bk: 46647 Pg: 336-337);

2. The entry of a writ of attachment in the amount of $634,043 on Defendant Parinejad's real property located at 1243 Beacon Street, #5C, Brookline, Massachusetts (Deed at Bk: 27078 Pg: 540-541);

3. Defendant Parinejad is enjoined from transferring or encumbering the following real property: 64 Allston Street, #6, Allston, MA; 249 Chestnut Hill Ave., #22, Brighton, MA; 64 Commonwealth Ave., #4, Boston, MA; 28 Quint Ave., #51, Allston, MA; and 15 Alton Ct., #4, Brookline, MA;

4. Defendant Parinejad is enjoined from distributing, transferring, assigning, pledging or otherwise encumbering any funds, revenues or assets, other than for ordinary living expenses. Defendant Parinejad is further enjoined from operating, using or transferring funds, revenues or other business monies into any new or previously undisclosed bank account; and

5. Defendant Webster Auto Sales is enjoined from distributing, transferring, assigning, pledging or otherwise encumbering any funds, revenues or assets that it holds, other than for ordinary business expenses. Defendant Webster Auto Sales is further enjoined from operating, using or transferring funds, revenues or other business monies into any new or previously undisclosed bank account.

So ordered.

Date: April 18, 2013 _____ , J.)

# NOTIFY

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, SS.**

**SUPERIOR COURT**
**#12-1515B**

**HERB CHAMBERS 1186, INC., d/b/a**
**HERB CHAMBERS INFINITI OF BOSTON,**
    **Plaintiff**

*Filed 4/16/13*
*(Pirell v Muscat)*
*asst clerk*

**v.**

**DONALD A. SMITH, JR, PRESTIGE AUTO IMPORTS, INC.,**
**d/b/a Webster Auto Sales,**
**REZA PARINEJAD, OLYMPIC TOWING, INC.,**
**and GENANE G. CASTRO ,**
    **Defendants**

Notice sent
4/18/2013
I. J. P.
T. & W.
S. J. G.
C. & C.
S. K.
K. & K.
G. G. C.
H. M. C.

**v.**

**BANK OF AMERICA,**
    **Trustee Process Defendant**

### DEFENDANTS' MOTION TO CONTINUE HEARING

(sc)

### SCHEDULED FOR APRIL 17, 2013,

### ON PLAINTIFF'S MOTION TO ATTACH AND PRELIMINARY INJUNCTION

The defendants, Prestige Auto Imports, Inc., d/b/a Webster Auto Sales, and Reza Parinejad move that the hearing on the plaintiff's Renewed Motion for Pre-Judgment Real Estate Attachment and Temporary Restraining Order be continued from Wednesday, April 17, 2013, at 2:00 p.m. to Thursday, May 2, 2013, at 2:00 p.m. In the meanwhile, said defendants will continue to maintain the status quo as they have done from the inception of this action.

The grounds for this Motion to Continue are as follows:

*DENIED for reasons stated on the record. 4/17/13*

COMMONWEALTH OF MASSACHUSETTS

10-17

30

SUFFOLK, SS

SUFFOLK SUPERIOR COURT
CIVIL ACTION NO.

12-15

Herb Chambers

**PLAINTIFF**          (Print Name Clearly)

B

VS

Smith Jr etal

**DEFENDANT**          (Print Name Clearly)

EMERGENCY
MOTION Remove Defoutt

Now comes the plaintiff/defendant   GENANE CASTRO

and moves this Honorable Court to   Remove Defout

ComPLAINT NOT ANSWers do to
INADUERTANCE Corporate smith counsel
WAS suppose to Represent me
ONLY Recent found out complaint
Complaint. was not ANSWered

Allowid, default is vacated
Eva Dalery fer 10/17/12

Notice sent
10.18.12
GGC
HMC
TTW
SJG
CHC
SK
KHK
(MDJ)

Dated this          day of   Genane Contros 200   10/15/12

315 CHArger St APT 77
Revere MA 02151          Signature
7817263822

Arented to by
Plaintiff
[signature]          10/15/12

Ian Parta BBO CG7812
Todd + Weld LLP
28 Cate St   Boston 02con



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT
                                               #12-1515B

HERB CHAMBERS 1186, INC., d/b/a
HERB CHAMBERS INFINITI OF BOSTON,

V.

DONALD A. SMITH, JR, PRESTIGE AUTO IMPORTS, INC.,
d/b/a Webster Auto Sales,
REZA PARINEJAD, OLYMPIC TOWING, INC.,
and GENANE G. CASTRO

## MODIFICATION OF ORDER

The Order by Elizabeth M. Fahey, Justice of the Superior Court, dated

April 25, 2012, a copy of which is recorded with Middlesex Registry of Deeds in Book

59063, Page 145, prohibiting Reza Parinejad, one of the defendants in the above-

captioned matter, from encumbering the property at 78 Truman Road, Newton,

Massachusetts, is hereby modified as follows:

Reza Parinejad may refinance the existing mortgage on the property at 78

Truman Road, Newton, Massachusetts, by placing a new first mortgage to Chase Bank

thereon at no more than $270,000.00, with a rate of interest not to exceed 3.250%.

Except as modified herein the Order of Elizabeth M. Fahey, Justice of the

Superior Court, dated April 25, 2012, remains in full force and effect.

_____
Justice of the Superior Court
Date:   10/1/12

## Commonwealth of Massachusetts
### County of Suffolk
### The Superior Court

CIVIL DOCKET #     SUCV2012-01515

RE: **Herb Chambers 1186 Inc v Smith Jr et al**

TO: Sylvia Katsenes
Katsenes & Katsenes
743 Washington Street
Newtonville, MA  02460

## ORDER OF DEFAULT UNDER STANDING ORDER 1 - 88

This action came on before the Court, pursuant to Standing Order 1-88 and the
defendant(s) named below having failed to respond to the complaint, it is
ORDERED that the said defendant(s) is(are) hereby DEFAULTED.

Castro, Ganane G

The plaintiff shall file:

1) A motion for an assessment of damages and default judgement pursuant to
Mass.R.Civ.P.55(b)2 and subject to Mass.R.Civ.P.54(b) by 10/28/2012, or

2) A request for Default judgement pursuant to Mass.R.Civ.P 55(b)1 and subject
to Mass.R.Civ.P.54(b) by 10/28/2012 (contract-sum certain only).

Dated this 28th day of September, 2012.

Linda E.Giles, Justice

Michael Joseph Donovan
Clerk of Courts

BY·

Richard Muscato
Assistant Clerk

Telephone: 617-788-8141

Copies mailed.

NOTIFY

25

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
#12-1515B

HERB CHAMBERS 1186, INC., d/b/a

Notice sent
7/11/2012
H. M. C.
T. & W.
S. J. G.
C. & C.
S. K.
K. & K.     (sc)

v.

DONALD A. SMITH, JR., et als

### EMERGENCY MOTION WITH PRIOR NOTICE
### OF DEFENDANT REZA PARINEJAD
### TO QUASH OR LIMIT SUBPOENA
### SERVED BY PLAINTIFF ON BANK OF AMERICA

Reza Parinejad, a defendant in the above-captioned matter, moves that the deposition subpoena served on June 29, 2012, by the plaintiff, Herb Chambers 1186, Inc., on Bank of America ("the bank"), requesting that the bank produce all of the defendant's bank statements, checks, and deposits from 2005 to the present, together with copies the signatory cards for the accounts, be quashed or limited. A copy of said deposition subpoena is attached hereto and made part hereof as Exhibit 1.

The grounds for this motion are that the scope of the documents sought is overly broad, excessive, not material, not likely to lead to the discovery of admissible evidence, and an invasion of the defendant's right to privacy. Details are set forth in the Brief submitted in support of this motion.

Wherefore, the defendant, Reza Parinejad, requests that the subpoena served by the plaintiff on Bank of America be quashed or limited or for such other relief as is just and equitable.

 **Bank of America**

*Bank of America, N.A.*
*Legal Order Processing*
*Mail Stop: NY7-501-01-16*
*5701 Horatio Street*
*Utica, NY 13502*
*Fax No. (617) 310-2751*

*May 1, 2012*

*Clerk of the Court*
*Suffolk County Superior Court*
*Three Pemberton Square*
*Boston, MA 02108*

*Re: Herb Chambers 1886, Inc. d/b/a Herb Chambers Infiniti of Boston*
*Vs: Donald A. Smith, Jr. Et Al.*

*Dear Sir or Madam:*

*Enclosed is a copy of the Trustee's Answer with respect to the above-mentioned action. Please file on our behalf.*

*Sincerely,*

*Carol West*
*Northeast Legal Order Processing*
*(315) 734-8376*

*cc:  Todd & Weld LLP*

21

*Commonwealth of Massachusetts*

*Suffolk, ss*                                        *Civil Action: 12-1515B*

*Herb Chambers 1886, Inc. d/b/a Herb Chambers Infiniti of Boston*
*Plaintiff(s)*

                                                         *Answer of Trustee*
                                                         *Bank of America, N.A.*

*Vs.*

*Donald A. Smith, Jr. Et Al.*

*Defendant(s)*

*and*

*Bank of America, N.A.*

_____

*And now on behalf of Bank of America, N.A., a National Banking Association summoned as*
*trustee of the defendant(s) in the above-entitled action, appears Carol West, authorized*
*official, who makes an answer that at the time of service of the plaintiff's writ upon it, Bank of*
*America is holding a credit of $0.00 in the name of Donald A. Smith.*

*Signed under the pains and penalties of perjury.*

                         *Bank of America, N.A., Trustee*

          *By:* _____ *Date:* _5/1/1_

                         *Carol West*
                         *Northeast Legal Order Processing*
                         *5701 Horatio Street*
                         *Utica, NY 13502*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                          SUPERIOR COURT DEPARTMENT
                                      OF THE TRIAL COURT
                                      CIVIL ACTION NO. 12-1515B

|  |  |
|---|---|
| HERB CHAMBERS 1186, d/b/a,<br>HERB CHAMBERS INFINITY OF<br>BOSTON<br>    Plaintiff, | )<br>)<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| DONALD A. SMITH, JR. et al<br>    Defendant. | )<br>)<br>)<br>) |

ANSWER AND JURY CLAIM OF
DEFENDANT DONALD A. SMITH, JR.

(1)    As to ¶1, Defendant Donald A. Smith, Jr. (hereinafter "Smith") admits that

he sold certain vehicles owned by Plaintiff to the co-defendants. Defendant denies any

allegations that certain "profits" on the vehicles in issue were lost by the Plaintiff.

(2)    As to ¶2, Defendant Smith admits that he sold approximately 19 vehicles

to Defendant Webster Auto Sales and 1 vehicle to Defendant Olympic Towing in

violation of Plaintiff's business practices. The remaining allegations are denied.

(3)    As to ¶3, Defendant Smith admits that he sold 3 vehicles to Defendant

Webster with a list value to the Plaintiff of $31,982.50 for which the Plaintiff has not

been reimbursed. The remaining allegations of ¶3 are denied.

(4)    Defendant Smith admits the allegations of ¶4.

(5)    Defendant Smith admits the allegations of ¶5.

(6)    Defendant Smith admits the allegations of ¶6.

(7)     As to ¶7, Defendant Smith admits he is a former employee of Chambers Infinity.  The remaining allegation of ¶7 is denied.

(8)     Defendant Smith admits the allegations of ¶'s 8 & 9 on information and belief.

(9)     Defendant Smith admits the allegations of ¶'s 10, 11 & 12 on information and belief.

(10)    Defendant Smith admits the allegations of ¶'s 13, 14, & 15.

(11)    Defendant Smith admits the allegations of ¶'s 16 & 17.

(12)    As to ¶18, Defendant Smith admits the allegations contained therein excepting the word "only".

(13)    Defendant Smith admits the allegations of ¶19 on information and belief.

(14)    Defendant Smith admits the allegations of ¶'s 20, 21 and 22.

(15)    Defendant Smith admits the allegations of ¶23 on information and belief.

(16)    Defendant Smith admits the allegations of ¶24.

(17)    Defendant Smith admits the allegations of ¶25 excepting any reference to profits of which said Defendant is unaware.

(18)    Defendant Smith denies the allegations of ¶26.

(19)    As to ¶27, Defendant Smith admits the allegations therein, excepting any reference to profits and any alleged "kick back".

(20)    Defendant Smith admits the allegations of ¶'s 28, 29 and 30.

(21)    Defendant Smith admits the allegations of ¶'s 31 and 32 on information and belief.

(22)   As to ¶33, Defendant Smith admits that he was previously associated with Defendant Parinejad prior to his employ at Infinity of Boston, the remaining allegations are denied.

(23)   Defendant Smith denies the allegations of ¶34.

(24)   Defendant Smith lacks sufficient knowledge to admit or deny the allegations of ¶35.

(25)   Defendant Smith denies the allegations of ¶36 and ¶37.


## As to Count I

(26)   Defendant Smith repeats and incorporates herein by reference his responses to all allegations.

(27)   Defendant Smith admits the allegations of ¶'s 39 and 40.

(28)   Defendant Smith admits that the damages for which he is liable amount to $31,982.50.


## As to Count II

(29)   Defendant Smith repeats and incorporates herein by reference his responses to all allegations.

(30)   As to ¶43, Defendant Smith states that the allegation is a question of law.

(31)   Defendant Smith admits the allegations of ¶44.

(32)   Defendant Smith lacks sufficient knowledge to admit or deny the allegations of ¶'s 45, 46 and 47, excepting that Defendant Smith stipulates to damages of $31,982.50.

- 4 -

**As to Count III**

(33)    Defendant Smith repeats and incorporates herein by reference his responses to all allegations.

(34)    Defendant Smith admits the allegations of ¶'s 49 and 50.

(35)    Defendant Smith denies the allegations of ¶51.

(36)    Defendant Smith lacks sufficient knowledge to admit or deny the allegations of ¶52.

(37)    Defendant Smith admits that the Plaintiff has suffered damages in the amount of $31,982.50.

**As to Count IV**

(38)    Defendant Smith repeats and incorporates herein by reference his responses to all allegations.

(39)    Defendant Smith denies the allegations of ¶'s 55, 56, 57, 58, 59 and 60.

**As to Count V**

(40)    Defendant Smith repeats and incorporates herein by reference his responses to all allegations.

(41)    Defendant Smith admits the allegations of ¶'s 62 and 63, excepting that Defendant Smith admits that the damages herein total $31, 982.50.

<u>As to Count VI</u>

(42)   Defendant Smith repeats and incorporates herein by reference his responses to all allegations.

(43)   Defendant Smith admits the allegations contained in ¶'s 65, 66, 67 and 68 excepting that Defendant Smith states that the damages herein are limited to $31,982.50.


<u>As to Count VII</u>

(44)   Defendant Smith repeats and incorporates herein by reference his responses to all allegations.

(45)   Defendant Smith lacks sufficient knowledge to admit or deny the allegations of ¶'s 70 and 71.


<u>As to Count VIII</u>

(46)   Defendant Smith repeats and incorporates herein by reference his responses to all allegations.

(47)   Defendant Smith admits the allegations of ¶'s 72 and 73.

(48)   Defendant Smith denies the allegations of ¶'s 76, 77 and 78.


<u>As to Count IX</u>

(49)   Defendant Smith repeats and incorporates herein by reference his response to all allegations.

(50)   Defendant Smith lacks sufficient knowledge to admit or deny the allegations of ¶'s 80, 81, 82 and 83.

- 6 -

## Affirmative Defenses

### First Defense

Count IV fails to state a claim upon which relief can be granted.

### Second Defense

Count V fails to state a claim upon which relief can be granted.

By its attorney,

Stephen J. Gill
BBO No. 192090
11 Middle Street
Natick, MA  01760
(508) 655-3395

- 7 -

## CERTIFICATE OF SERVICE

I, Stephen J. Gill, certify that I have caused a coy of this document to be served on the below listed attorneys for the parties by first class mail, postage prepaid this _4th_ day of June 2012.

> Howard M. Cooper
> Ian J. Pinta
> Todd & Weld LLP
> 28 State St, 31st Floor
> Boston, MA 02109
>
> Sylvia Katsenes
> Katsenes & Katsenes
> 743 Washington Street
> Newton, MA 02460

Dated: _6/4/12_ 

Stephen J. Gill
BEO No. 192090
11 Middle Street
Natick, MA 01760
(508) 655-3395

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS
SUPERIOR COURT
#12-1515B

HERB CHAMBERS 1186, INC., d/b/a

V.

DONALD A. SMITH, JR, et als

ANSWER OF DEFENDANTS, REZA PARINEJAD AND

PRESTIGE AUTO IMPORTS, INC., AND

CROSS CLAIM AGAINST DONALD A. SMITH, JR.

The defendants, Reza Parinejad and Prestige Auto Imports, Inc., respond to the allegations in the plaintiff's Verified Complaint as follows:

1.        The defendants deny the allegations in paragraph 1.

2.        The defendants admit that Donald A. Smith, Jr., was the General Sales Manager for the plaintiff but deny the remaining allegations in paragraph 2.

3.        The defendants deny the allegations in paragraph 3.

4.        The defendants neither admit nor deny the allegations in paragraph 4 inasmuch as they pertain to questions of law rather than allegations of fact.

5.        The defendants neither admit nor deny the averments in paragraph 5 in as much as they pertain to questions of law rather than allegations of fact.

6.        The defendants admit the allegations in paragraph 6.

7.         The defendants admit that Donald Smith is a former employee of the plaintiff but are without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 7.

8.         The defendants deny the allegations in paragraph 8.

9.         The defendants admit the allegations in paragraph 9.

10.        The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 10.

11.        The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 11.

12.        The defendants admit the allegations in paragraph 12 and state that the plaintiff wrongfully caused Reza Parinejad's account to be attached for $50,000.00, in violation of the Court's order.

13.        The defendants deny the allegations in paragraph 13.

14.        The defendants admit that Donald Smith was a General Sales Manager of the plaintiff, but are without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 14.

15.        The defendants admit that Donald Smith as a General Sales Manager had full access to Certificates of Title but are without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 15.

16.        The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 16.

2

17.     The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 17.

18.     The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 18.

19.     The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 19.

20.     The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 20.

21.     The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 21.

22.     The defendant, Prestige Auto Imports, Inc., admits having possession of the three described vehicles, but states that it acquired title to those vehicles rightfully, as a good faith purchaser, for fair value.

23.     The defendants admit the allegations in paragraph 23 but deny the truth of the matters stated in the email and letter.

24.     The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 24.

25.     The defendants deny the allegations in paragraph 25.

26.     The defendants deny the allegations in paragraph 26.

27.     The defendants deny the allegations in paragraph 27.

28.     The defendants deny the allegations in paragraph 28.

29.      The defendants admit that they were not involved in any fraud and admit they were not involved with the co-defendants, Olympics and Castro, but are without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 29.

30.      The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 30.

31.      The defendants admit that the email referred to in paragraph 31 was sent and received but deny the allegations in the email.

32.      The defendants neither admit nor deny the allegations in paragraph 32 inasmuch as the email referred to therein is a writing which speaks for itself.

33.      The defendants deny the allegations in paragraph 33.

34.      The defendants deny the allegations in paragraph 34.

35.      The defendants deny the allegations in paragraph 35.

36.      The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 36.

37.      The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 37.

38.      In response to the allegations in paragraph 38, the defendants repeat and re-aver their responses to paragraphs 1-38 as if expressly re-written herein.

39.      The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 39.

40.         The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 40.

41.         The defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 41.

42.         In response to the allegations in paragraph 42, the defendants repeat and re-aver their responses to paragraphs 1-41 as if expressly re-written herein.

43.         The defendants deny the allegations in paragraph 43.

44.         The defendants deny the allegations in paragraph 44.

45.         The defendants deny the allegations in paragraph 45.

46.          The defendants deny the allegations in paragraph 46.

47.         The defendants deny the allegations in paragraph 47.

48.         In response to the allegations in paragraph 48, the defendants repeat and re-aver their responses to paragraphs 1-47 as if expressly re-written herein.

49.         The plaintiff has failed to comply with the requirements of Rule 9 (b) of the Massachusetts Rules of Civil Procedure by not stating the averments of the alleged fraud with particularity.  Without waiving this defect in pleading, the defendants deny the allegations in paragraph 49.

50.         Without waiving the above-described defect in pleading, the defendants deny the allegations in paragraph 50.

51.         Without waiving the above-described defect in pleading, the defendants deny the allegations in paragraph 51.

52.       Without waiving the above-described defect in pleading, the defendants deny the allegations in paragraph 52.

53.       Without waiving the above-described defect in pleading, the defendants deny the allegations in paragraph 53.

54.       In response to the allegations in paragraph 54, the defendants repeat and re-aver their responses to paragraphs 1-53 as if expressly re-written herein.

55.       The defendants deny the allegations in paragraph 55.

56.       The defendants deny the allegations in paragraph 56.

57.       The defendants deny the allegations in paragraph 57.

58.       The defendants deny the allegations in paragraph 58.

59.       The defendants deny the allegations in paragraph 59.

60.       The defendants deny the allegations in paragraph 60.

61.       In response to the allegations in paragraph 61, the defendants repeat and re-aver their responses to paragraphs 1-60 as if expressly re-written herein.

62.       The defendants deny the allegations in paragraph 62.

63.       The defendants deny the allegations in paragraph 63.

64.       The defendants do not respond to the allegations in paragraph 64 inasmuch as the same do not apply to them.

65.       The defendants do not respond to the allegations in paragraph 65 inasmuch as the same do not apply to them.

66.       The defendants do not respond to the allegations in paragraph 66 inasmuch as the same do not apply to them.

67.　　　The defendants do not respond to the allegations in paragraph 67 inasmuch as the same do not apply to them.

68.　　　The defendants do not respond to the allegations in paragraph 68 inasmuch as the same do not apply to them.

69.　　　In response to the allegations in paragraph 69, the defendants repeat and re-aver their responses to paragraphs 1-68 as if expressly re-written herein.

70.　　　The defendants deny the allegations in paragraph 70.

71.　　　The defendants deny the allegations in paragraph 71.

72.　　　In response to the allegations in paragraph 72, the defendants repeat and re-aver their responses to paragraphs 1-71 as if expressly re-written herein.

73.　　　The defendants admit that Smith was an employee of the plaintiff but neither admit nor deny the remaining allegation inasmuch as they are a conclusion of law.

74.　　　The defendants admit that they knew Smith was an employee of the plaintiff but deny they knew about the terms of the "employment arrangement" (whatever that may mean) between Smith and the plaintiff.

75.　　　The defendants deny the allegations in paragraph 75.

76.　　　The defendants deny the allegations in paragraph 76.

77.　　　The defendants deny the allegations in paragraph 77.

78.　　　The defendants deny the allegations in paragraph 78.

79.　　　In response to the allegations in paragraph 79, the defendants repeat and re-aver their responses to paragraphs 1-78 as if expressly re-written herein.

80.     The defendants deny that Reza Parinejad was engaged in trade or commerce within Massachusetts within the meaning of General Laws Chapter 93A.

81.     The defendants deny the allegations in paragraph 81.

82.     The defendants deny the allegations in paragraph 82.

83.     The defendants deny the allegations in paragraph 83.

FIRST DEFENSE:

The Complaint fails to state a claim for which relief can granted.

SECOND DEFENSE:

The plaintiff does not have title to the vehicles in question.

THIRD DEFENSE:

The defendants were good faith purchasers for value of the vehicles in question.

FOURTH DEFENSE:

The defendants were bona fide purchasers for value of the vehicles in question.

FIFTH DEFENSE:

The defendants had no knowledge of the plaintiff's alleged ownership of the vehicles.

SIXTH DEFENSE:

The defendants acquired good title to all vehicles which they or either of them purchased from Donald Smith.

SEVENTH DEFENSE:

By entrusting Donald A. Smith, Jr. with the Certificates of Title to the vehicles in question, duly executed in blank by the plaintiff, the plaintiff enabled Smith to perpetrate the fraud. Therefore, the plaintiff is estopped from making claim against the defendants and denying the defendants' title to said vehicles.

EIGHTH DEFENSE:

The plaintiff placed Donald A. Smith, Jr., in a position to perpetrate the fraud. Therefore, the plaintiff is estopped from making claim against the defendants and denying the defendants' title to said vehicles.

NINTH DEFENSE:

The plaintiff clothed Donald A. Smith, Jr., with the apparent ownership of the vehicles. Therefore, the plaintiff is estopped from making claim against the defendants and denying the defendants' title to said vehicles.

TENTH DEFENSE:

If the plaintiff were owed any monies, the same has been paid in full.

## CROSS CLAIM OF REZA PARINEJAD AND PRESTIGE AUTO IMPORTS, INC., AGAINST DONALD A. SMITH, JR.

1.    The plaintiff in cross claim, Reza Parinejad, is an individual who resides at 78 Truman Road, Newton, Massachusetts.

2.        The plaintiff in cross claim, Prestige Auto Imports, Inc., is a duly organized Massachusetts corporation, having its principal place of business at 61 Prospect Street, Somerville, Massachusetts, where it does business under the name of Webster Auto Sales.

3.        The plaintiffs in cross claim are hereinafter referred to simply as the plaintiffs.

4.        The plaintiffs are defendants in the case in chief.

5.        The defendant in cross claim, Donald A. Smith, Jr., is an individual.  He is referred to herein simply as Smith or the defendant.

6.        Smith is also a defendant in the case in chief.

7.        At all times material hereto Smith was general sales manager of HERB CHAMBERS 1186, INC., ("Chambers"), the plaintiff in the case in chief.

8.        At all times material hereto, Chambers had a program in place wherein it allowed its employees to purchase vehicles from it.

9.        Chambers had entrusted Smith with Certificates of Titles to certain vehicles.

10.        Those Certificates of Title had been duly executed in blank by Chambers, leaving the name of the purchaser to be inserted.

11.        From approximately December 2010, to April 2012, Smith represented to the plaintiffs that he had purchased certain vehicles from Chambers under the employee program.

12.     The plaintiffs believed Smith and relied on his statements and on the fact that Smith had the Certificates of Titles to those vehicles which had been duly executed in blank by Chambers, leaving the name of the purchaser to be inserted.

13.     As a result, the plaintiff, Prestige Auto Imports, Inc., purchased certain vehicles from Smith in good faith and for fair value and Smith delivered to said plaintiff the vehicles together with the Certificates of Title to said vehicles, duly executed by Chambers.

14.     Chambers now claims that Smith had not purchased the vehicles from Chambers and that Chambers owns the vehicles which the plaintiff purchased from Smith.

15.     Chambers has brought the case in chief against the plaintiffs and is making claim for the value of said vehicles and for lost profits.

16.     As a result, the plaintiffs have been damaged including but not limited to costs and attorney's fees paid or incurred by them in defending the case in chief and for any judgment which may be entered against them, or either of them, in the case in chief.

        Wherefore, Reza Parinejad and Prestige Auto Imports, Inc., demand judgment against Donald A. Smith, Jr., together with interest and costs.

11

By their attorney,

Sylvia  Katsenes
KATSENES AND KATSENES
743 Washington Street
Newton, MA. 02460-1701
(617) 244-2137 – T
(617) 244-7442 –F
Skatsenes@aol.com
May  8,  2012

I Hereby Certify That A True Copy Of The
Above  Document  Was  Served  Upon  The
Attorney Of Record For Each Other Party By
Mail-Hand On  may  8, 2012

NOTIFY

NOTIFY

3

V 5/4

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

HERB CHAMBERS 1186, INC. d/b/a
HERB CHAMBERS INFINITI OF BOSTON,

Plaintiff,

v.

DONALD A. SMITH, JR., PRESTIGE AUTO
IMPORTS, INC. d/b/a WEBSTER AUTO
SALES, REZA PARINEJAD, OLYMPICS
TOWING, INC. and GENANE G. CASTRO,

Defendants,

v.

BANK OF AMERICA

Trustee Process Defendant.

C.A. No. **12-1515 B**

Notice sent
4/26/2012
H. M. C.
T. & W.
S. K.
K. & K.

(sc)

Notice sent
5/07/2012
H. M. C.
T. & W.
S. K.
K. & K.

(sc)

2012 APR 20 AM 10: 30
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
SUFFOLK SUPERIOR COURT

**PLAINTIFF'S _EX PARTE_ MOTION FOR PRE-JUDGMENT REAL ESTATE
ATTACHMENT, TRUSTEE PROCESS ATTACHMENT AND
TEMPORARY RESTRAINING ORDER**

Pursuant to Massachusetts Rules of Civil Procedure 4.1, 4.2 and 65, as well as G.L. c.

246, the plaintiff, Herb Chambers 1186, Inc. d/b/a Herb Chambers Infiniti of Boston ("Chambers

Infiniti") hereby respectfully moves under parte and on an emergency basis for the following pre-

judgment security: a real estate attachment in the amount of $85,934 and a trustee process

attachment in the amount of $85,934 against each Defendant – Donald A. Smith, Jr. ("Defendant

Smith"); Reza Parinejad ("Defendant Parinejad"), President of Prestige Auto Imports, Inc. d/b/a

Webster Auto Sales ("Defendant Webster Auto Sales"); and Genane Castro ("Defendant

Castro"), President of Olympics Towing, Inc. ("Defendant Olympics Towing").  Plaintiff also

1

NOTIFY

9

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
CIVIL ACTION
NO. 2012-1515-B

Notice sent
4/26/2012
H. M. C.
T. & W.
S. K.
K. & K.

### HERB CHAMBERS 1186, INC.
#### d/b/a HERB CHAMBERS INFINITI OF BOSTON
Plaintiff

v.

### DONALD A. SMITH, JR., et al.[1]
Defendants

(sc)

## ORDER ON PLAINTIFF'S MOTION
## FOR PRE-JUDGMENT REAL ESTATE ATTACHMENT,
## TRUSTEE PROCESS ATTACHMENT
## AND TEMPORARY RESTRAINING ORDER

Until further order, the real estate at 78 Truman Road, Newton, is not to be sold or

encumbered.  Until further order, Defendant Prestige Auto Imports, Inc., d/b/a Webster Auto

Sales, and defendant Reza Parinejad are not to sell or encumber the 2004 Hummer, 2005

Suburban or 2003 Infiniti.  Defendant Donald A. Smith, Jr. is not to transfer or encumber any

real estate he owns or in which he has any ownership interest.

By the Court,

Elizabeth M. Fahey
Justice of the Superior Court

DATED: 4/25/12

---

[1]Prestige Auto Imports, Inc., d/b/a Webster Auto Sales, Reza Parinejad, Olympics
Towing, Inc., and Genane G. Castro.

NOTIFY

3

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

HERB CHAMBERS 1186, INC. d/b/a )
HERB CHAMBERS INFINITI OF BOSTON, )
)
Plaintiff, )
)
v. )
)
DONALD A. SMITH, JR., PRESTIGE AUTO )
IMPORTS, INC. d/b/a WEBSTER AUTO )
SALES, REZA PARINEJAD, OLYMPICS )
TOWING, INC. and GENANE G. CASTRO, )
)
Defendants, )
)
v. )
)
BANK OF AMERICA )
)
Trustee Process Defendant. )

C.A. No.   **12-1515** B

Notice sent
4/26/2012
H. M. C.
T. & W.
S. K.
K. & K.

(sc)

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
2012 APR 20  AM 10:30

### PLAINTIFF'S *EX PARTE* MOTION FOR PRE-JUDGMENT REAL ESTATE ATTACHMENT, TRUSTEE PROCESS ATTACHMENT AND TEMPORARY RESTRAINING ORDER

Pursuant to Massachusetts Rules of Civil Procedure 4.1, 4.2 and 65, as well as G.L. c.

246, the plaintiff, Herb Chambers 1186, Inc. d/b/a Herb Chambers Infiniti of Boston ("Chambers

Infiniti") hereby respectfully moves ex parte and on an emergency basis for the following pre-

judgment security: a real estate attachment in the amount of $85,934 and a trustee process

attachment in the amount of $85,934 against each Defendant -- Donald A. Smith, Jr. ("Defendant

Smith"); Reza Parinejad ("Defendant Parinejad"), President of Prestige Auto Imports, Inc. d/b/a

Webster Auto Sales ("Defendant Webster Auto Sales"); and Genane Castro ("Defendant

Castro"), President of Olympics Towing, Inc. ("Defendant Olympics Towing").  Plaintiff also

i

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

12–1515B

HERB CHAMBERS 1186, INC.   **No.** _____
d/b/a HERB CHAMBERS INFINITI
OF BOSTON
_____, Plaintiff(s)

v.

DONALD A. SMITH, JR., ET AL.
_____, Defendant(s)

## SUMMONS

To the above-named Defendant: Prestige Auto Imports, inc. d/b/a Webster Auto Sales
61 Prospect Street, Somerville, MA

You are hereby summoned and required to serve upon _____ Ian J. Pinta of _____ Todd & Weld LLP

plaintiff's attorney, whose address is  28 State Street, Boston, MA 02109 _____ , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the _____20th_____ day of
_____ April _____, in the year of our Lord two thousand __twelve_____ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
   each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P.   3rd Rev. 20M-10/11

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _April 24_, 201_2_, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_I do hereby accept service of process on behalf of Prestige auto imports Inc._

Dated: _4/24_, 201_2_

_Sylvia Katsenes_
SYLVIA KATSENES
attorney for Prestige
auto imports, Inc.

N.B.   TO PROCESS SERVER: –
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

_____, 201_ .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION    12-1515B
No. _____

HERB CHAMBERS 1186, INC. d/b/a
HERB CHAMBERS INFINITI OF BOSTON
, Plff(s).

v.

DONALD A. SMITH, JR., ET AL.
, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 12-1515B

HERB CHAMBERS 1186, INC. d/b/a
HERB CHAMBERS INFINITI OF BOSTON , Plaintiff(s)

v.

DONALD A. SMITH, JR., ET AL.

, Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant: Reza Parinejad, 78 Truman Road, Newton, MA

You are hereby summoned and required to serve upon Ian J. Pinta of
Todd & Weld LLP
plaintiff's attorney, whose address is 28 State Street, Boston, MA 02109 , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the 20th day of
April , in the year of our Lord two thousand twelve .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on _____, 201___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

*I do hereby accept service of process on behalf of Reza Barnegad.*

Dated: 4/24/ ,2012

*Sylvia Halieto*
SYLVIA HATSENES
*attorney for Reza Barnegad*

N.B.  TO PROCESS SERVER: –
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

|  |
|---|
| ,201 . |

Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____  12–1515B

HERB CHAMBERS 1186, INC. d/b/a
HERB CHAMBERS INFINITI OF BOSTON
_____ , Plff(s).

v.

DONALD A. SMITH, JR., ET AL.
_____ , Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

|  |  |
|---|---|
| HERB CHAMBERS 1186, INC. d/b/a HERB CHAMBERS INFINITI OF BOSTON, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No.  12-1515 |
| DONALD A. SMITH, JR., PRESTIGE AUTO IMPORTS, INC. d/b/a WEBSTER AUTO SALES, REZA PARINEJAD, OLYMPICS TOWING, INC. and GENANE G. CASTRO, | ) ) ) ) ) ) |
| Defendants, | ) ) |
| v. | ) ) |
| BANK OF AMERICA | ) ) |
| Trustee Process Defendant. | ) ) |

2012 APR 20  AM 10: 30
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

SUFFOLK, ss.      SUPERIOR COURT DEPT.
(SEAL)      4-20-12
ALLOWED BY THE COURT.
Leibensperger  J.
ATTEST:  Timothy Walsh

## PLAINTIFFS' MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Plaintiff Herb Chambers 1186, Inc. d/b/a Herb Chambers Infiniti of Boston  moves that

the Court specially appoint Thomas Savage and/or Disinterested Parties, Inc., 427 Neck Street,

Weymouth, Massachusetts, and/or Simmons Agency, 190 High Street, Boston, Massachusetts,

qualified persons over the age of 18 who are not parties to this action, to serve upon Bank of

America and/or its respective registered agent and/or counsel the subpoena in this action and all

other process in this action.

1

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

|  |  |
|---|---|
| HERB CHAMBERS 1186, INC. d/b/a HERB CHAMBERS INFINITI OF BOSTON, | ) ) ) |
| Plaintiff, | ) ) C.A. No. |
| v, | ) ) |
| DONALD A. SMITH, JR., PRESTIGE AUTO IMPORTS, INC. d/b/a WEBSTER AUTO SALES, REZA PARINEJAD, OLYMPICS TOWING, INC. and GENANE G. CASTRO, | ) ) ) ) ) |
| Defendants, | ) ) |
| v, | ) ) |
| BANK OF AMERICA | ) ) |
| Trustee Process Defendant. | ) ) |

## VERIFIED COMPLAINT

1.      Through this action, the plaintiff, Herb Chambers 1186, Inc. d/b/a Herb Chambers

Infiniti of Boston ("Chambers Infiniti"), seeks to recover damages incurred as a result of the

illegal and fraudulent actions of the Defendants, each of whom participated in a conspiracy to

unlawfully misappropriate used vehicles from Chambers Infiniti so as to enjoy for themselves

the profit from the resale of the misappropriated vehicles to the public. The Defendants include a

corrupt former Chambers Infiniti manager who, together with his co-Defendants, ran their own

illegal side business whereby Defendant Smith improperly transferred and sold the subject

vehicles to his co-Defendants, utilizing fictitious or misappropriated identities, at a reduced price

in exchange for his receipt of payment from his co-Defendants personally despite the fact that the Titles to the subject vehicles were not in his name. As a part of the scheme, the corrupt manager would unlawfully transfer and sell additional vehicles in order to cover the "float" for the monies needed to be returned to the dealership in order to cover up his prior misappropriation of vehicles. As a further part of the scheme, the corrupt manager's co-Defendants repeatedly resold the misappropriated vehicles to customers at higher prices resulting in a profit to them and a loss to Chambers Infiniti.

2.     There is no serious dispute here that this scheme took place. Defendant, Donald A. Smith, Jr. ("Defendant Smith"), a former, now fired corrupt former general sales manager of Chambers Infiniti, and the primary architect of the scheme, has already admitted to Chambers Infiniti the details of the Defendants' unlawful activity. More specifically, Defendant Smith, has admitted as follows:  that he repeatedly unlawfully removed vehicles (estimated by him to be 12 to 18 vehicles but in reality substantially more) from the Chambers Infiniti dealership without permission; that he did so by using fictitious or misappropriated names of customers; that he and his co-Defendants knew the vehicles were supposed to be taken to an auto action and not wholesaled to a used car dealer; that, instead, Mr. Smith brought the vehicles to Defendants Reza Parinejad ("Defendant Parinejad"), President of Prestige Auto Imports, Inc. d/b/a Webster Auto Sales ("Defendant Webster Auto Sales"), and to Genane G. Castro ("Defendant Castro"), President of Olympics Towing, Inc. ("Defendant Olympics Towing"); that Mr. Smith then provided  multiple misappropriated Certificates of Title to his co-Defendants; that the Certificates of Title made clear that Chambers Infiniti was the owner of the vehicles; that despite the clear ownership, his co-Defendants would pay him personally either by check or cash; and that the co-Defendants would then markup the sales prices of the vehicles and resell the vehicles

to customers resulting in a profit for them. Each of the Defendants has enjoyed a long-standing relationship with each other and it was this relationship which allowed them to perpetrate their scheme for a significant period before being caught.

3.    Chambers Infiniti does not yet know the full extent of the scheme committed against it or the full amount of money lost because of the unlawful actions of the Defendants. Chambers Infiniti is nevertheless currently aware of at least three (3) vehicles it owned that were misappropriated and "sold" by Defendant Smith to Defendant Parinejad and/or Defendant Webster Auto Sales, for which Chambers Infiniti has received no compensation. The value of these misappropriated vehicles exceeds $30,000. Chambers Infiniti has demanded that Defendants Parinejad and Webster Auto Sales return the three vehicles, but they have refused to do so.

## JURISDICTION AND VENUE

4.    The jurisdiction of this Court over the Defendants is lawful and proper pursuant to G.L. c. 223A, § 1 et seq. because the Defendants either reside or have their places of business in Massachusetts.

5.    Venue exists in this county pursuant to G. L. c. 223, § 1 et seq., where Chambers Infiniti has its principal place of business in Suffolk County.

## PARTIES

6.    Chambers Infiniti is a Massachusetts corporation with a principal place of business at 1186 Commonwealth Avenue, Boston, Massachusetts.

7.    Defendant Smith is a former employee of Chambers Infiniti and resides at 8 Juniper Road, Upton, Massachusetts.

3

8.     Defendant Webster Auto Sales is a Massachusetts corporation having its principal place of business at 61 Prospect Street, Somerville, Massachusetts. It is a Class 2 Used Car Dealer licensed in Somerville. See copy of Certificate of License (attached as *Exhibit 1*).

9.     Defendant Parinejad is the President of Prestige Auto Imports, Inc. and resides at 78 Truman Road, Newton, Massachusetts. See copy of 2011 Annual Report for Prestige Auto Imports, Inc. (attached as *Exhibit 2*).

10.    Defendant Olympics Towing is a Massachusetts corporation having its principal place of business at 134 Newbury Street, Rear, Peabody, Massachusetts. See copy of 2011 Annual Report for Olympics Towing, Inc. (attached as *Exhibit 3*). Olympics Towing is not a licensed reseller of vehicles.

11.    Defendant Castro is the President of Olympics Towing and resides at 315 Charger St., Apt. 77, Revere, Massachusetts. Id.

12     Bank of America is a federally insured bank who, upon information and belief, is holding certain funds belonging to Defendant Smith and Defendant Parinejad. Bank of America has branches throughout Massachusetts.

## FACTS

### a. Background

13.    Chambers Infiniti operates a franchised automobile dealership in Boston, Massachusetts from which it retails new and used vehicles directly to the public. On occasion, Chambers Infiniti sells used vehicles at wholesale prices to other authorized dealerships or to the Lynnway Auto Auction, which is a third-party that sells vehicles at auction on consignment. One purpose of wholesaling only to authorized dealerships or the Lynnway Auto Auction is to prevent employees from appropriating vehicles at discounted wholesale prices, selling to

4

customers at higher markup prices, and then keeping the profit for themselves (and not the dealership).

14.     Defendant Smith, a former General Sales Manager of Chambers Infiniti who was fired for his actions giving rise to this complaint, has worked in the automotive industry for his entire career spanning more than twenty (20) years, and had been employed by Chambers Infiniti since October 1, 2009.

15.     As a General Sales Manager, Defendant Smith was placed in a position of trust at the dealership and had full knowledge and understanding of the processes by which Chambers Infiniti sold cars directly to customers and, alternatively, wholesaled vehicles solely to authorized dealerships and to the Lynnway Auto Auction. Defendant Smith also knew how the billing and financing of each process worked. As a General Sales Manager, Defendant Smith had full access to the Certificates of Title for every vehicle on Chambers Infiniti's dealership lot.

b.     **Chambers Infiniti Discovers Defendants' Unlawful Scam**

16.     On or about April 5, 2012, Chambers Infiniti learned of a discrepancy in one of Defendant Smith's sales regarding the improper structuring of cash payments.

17.     On or about April 9, 2012, Bradford A. Gomes, Director of Operations for The Herb Chambers Companies, questioned Defendant Smith about this discrepancy. Defendant Smith admitted that he had improperly structured a cash transaction, and was immediately fired and escorted off Chambers Infiniti's premises.

18.     On April 10, 2012, an employee of Chambers Infiniti discovered that a 2004 Hummer H2 was missing from the plaintiff's dealership lot, and contacted Defendant Smith about its location. Later that day, Defendant Smith and/or his attorney informed Chambers Infiniti that Defendant Smith had improperly wholesaled the Hummer to Defendant Parinejad at

Defendant Webster Auto Sales, an _un_authorized used-car dealer. Defendant Smith and/or his attorney informed Chambers Infiniti that this was the only car Defendant Smith had wholesaled

19.     Chambers Infiniti then commenced an effort to understand the scope of any wrongdoing by Defendant Smith. To that end, to date it has reviewed its accounts to determine the extent of Smith's improper actions and whether this was an isolated incident. Despite Defendant Smith's assurance that this was an isolated incident, Chambers Infiniti's review, which remains ongoing, has revealed numerous instances of improper wholesaling by Defendant Smith.

20.     Chambers Infiniti discovered, for example, that at least three of its vehicles have been wholesaled to Defendant Webster Auto by Defendant Smith, but Chambers Infiniti never received any compensation from any source whatsoever for these vehicles. These vehicles consist of the following:

a.     2004 Hummer H2 (VIN: 5GRGN23U14H106389) at cost of $15,612.50;

b.     2005 Subaru Legacy (VIN: 4S3BL676054204228) at cost of $9,885; and

c.     2003 Infiniti G35X (VIN: JNKCV51E93M016229) at cost of $6,485.

21.     These three vehicles have a cost value to Chambers Infiniti totaling a $31,982.50.

22.     Chambers Infiniti thereafter learned that these three vehicles are still in the possession of Defendant Parinejad and/or Defendant Webster Auto.

23.     On April 11, 2012, Mr. Gomes spoke with an individual at Defendant Webster Auto Sales, who confirmed that Defendant Parinejad and/or Defendant Webster Auto Sales purchased the three above-referenced vehicles. By email and letter that same day, Mr. Gomes requested that these three vehicles be immediately returned to Chambers Infiniti. See letter from Mr. Gomes, dated April 11, 2012 (attached as _Exhibit 4_). Defendant Webster Auto Sales refused to return the vehicles.

c.    **April 16th Meeting**

24.    On April 16, 2012, Defendant Smith, accompanied by legal counsel voluntarily appeared for a meeting with Mr. Gomes and others. The purpose of the meeting was to allow Chambers Infiniti to determine the full extent of the harm caused by Defendant Smith.

25.    At that meeting, Defendant Smith described in detail the process by which he, with the substantial assistance of the other Defendants, entered into numerous transactions in an effort to take for themselves and from Chambers Infiniti thousands of dollars. Defendant Smith described how he would wholesale vehicles to his co-Defendants in knowing violation of Chambers Infiniti's company policy in return for cash payments made directly to Defendant Smith or for checks paid directly to Defendant Smith in his personal capacity which he deposited into his personal bank account. Defendant Smith described how his co-Defendants knew from the Certificates of Title that he was not the actual owner of the vehicles but nevertheless paid him personally. Defendant Smith described how he would then provide the other Defendants with the wholesaled vehicles and with a certificate of title showing a sale from Chambers Infiniti (not Defendant Smith) to the other Defendants. Defendant Smith would subsequently repay Chambers Infiniti in cash or with a cashier's check with the proceeds from his latest unlawful transaction in order to mask the scheme but the amounts would not include the profit from the resale of the vehicle as that profit was taken by his co-Defendants.

26.    According to Defendant Smith, Defendant Parinejad knew that Chambers Infiniti did not wholesale cars to used-car dealers because of Chambers Infiniti's well-known policy against wholesaling to anyone other than an authorized dealership or the Lynnway Auto Auction.

27.    In the end, Defendants Parinejad, Webster Auto Sales, Castro, and Olympics Towing each paid discounted wholesale prices directly to Smith, but received vehicles with

Certificates of Title in the name of Chambers Infiniti, to whom they did not make payment. Defendants Parinejad, Webster Auto Sales, Castro, and Olympics Towing would then resell the vehicles that they "purchased" at wholesale prices for a profit to customers, thereby unlawfully generating a profit for themselves to the detriment of the Chambers Infiniti. Upon information and belief, these Defendants further kicked back additional funds to Smith, although he denies that this took place.

28.   At the April 16th meeting, Defendant Smith stated that he wholesaled vehicles in this manner approximately 12 to 18 times since approximately November 2010. Defendant Smith stated that he mostly wholesaled vehicles to Defendant Parinejad at Defendant Webster Auto Sales, and some to Defendant Castro at Defendant Olympics Towing.

29.   At the April 16th meeting, Defendant Smith said he only earned "two to three hundred dollars" on each vehicle, and "sometimes did not even break even." He expressly denied any other involvement or connection with either Defendants Parinejad or Castro. He also expressly denied that Defendants Parinejad and Castro were in any way connected with each other.

30.   At the April 16th meeting, Defendant Smith confirmed that there were actually three vehicles (not just the one vehicle to which he had previously admitted) that he had wholesaled to Defendant Parinejad at Defendant Webster Auto Sales, and for which he had been unable to repay Chambers Infiniti in any amount.

31   By email on April 16, 2012, Chambers Infiniti's counsel made another formal request, this time to counsel for Defendants Parinejad and Webster Auto Sales, that these three vehicles be immediately returned to Chambers Infiniti, and that any and all documents reflecting

transactions with Defendant Smith be preserved. See email from Attorney Cooper, dated April 16, 2012 (attached as *Exhibit 5*).

32.     By email on April 16, 2012, counsel for Defendants Parinejad and Webster Auto Sales refused to return the vehicles as requested, and instead stated that her clients would retain the vehicles. Id.

d.     **Subsequent Investigation Has Uncovered More Wrongdoing**

33.     Defendant Smith's assurance that he had no other involvement with the other Defendants is directly contradicted by his own resume on file with Chambers Infiniti which indicates that, from February 2007 through today, he has been a partner in Great Road Auto Imports, a pre-owned car dealership that is owned and operated by Defendant Parinejad. See copy of Defendant Smith's curriculum vitae (attached as *Exhibit 6*), copy of Great Road Auto Import's 2011 Annual Report (attached as *Exhibit 7*)

34.     Despite Defendant Smith's claims that he only profited "two to three hundred dollars" on each vehicle, upon information and belief, Defendant Smith received a percentage of the profit generated from the final resale of the vehicles to the end customer.

35.     Despite Defendant Smith's claim that Defendants Parinejad and Castro are not connected, information received from the Lynnway Auto Auction reveals that both Defendants Parinejad and Castro purchased vehicles at the auction on behalf of Auto Annex Auto Sales in Everett, Massachusetts.

36.     A review of Chambers Infiniti's accounts and video tapes has also revealed that Defendant Smith may have stolen the Certificate of Title to an Infiniti G Coupe that was recently purchased from an individual and intended to be resold by Chambers Infiniti. Defendant Smith can be seen on surveillance video moving the vehicle after hours on Friday, April 6, 2012.

Neither the keys to this vehicle nor its Certificate of Title has been located since Defendant Smith was fired on April 9, 2012, and he was the last person in possession of the keys. Upon information and belief, Defendant Smith intended on misappropriating this vehicle, but was fired before he had the opportunity to do so.

37.   Upon information and belief, Smith also misappropriated one of Chambers Infiniti's dealership designated dealership license plates, although he denies doing so.

## COUNT I:  BREACH OF CONTRACT
### (Chambers Infiniti v. Defendant Smith)

38.   Chambers Infiniti repeats and re-alleges each and every allegation above as if set forth herein.

39.   Chambers Infiniti and Defendant Smith entered into a valid and enforceable employment arrangement pursuant to which Smith was to provide his honest services to the dealership.

40.   Defendant Smith breached the terms and conditions of his employment arrangement with Chambers Infiniti through his conduct as set forth herein.

41.   As a result, Chambers Infiniti has suffered substantial damages in an amount to be determined at trial.

## COUNT II:  CONVERSION
### (Chambers Infiniti v. Defendants Smith, Parinejad, Webster Auto, Castro, Olympics Towing)

42.   Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

43.   Chambers Infiniti has lawful title to the vehicles that were unlawfully wholesaled by Defendant Smith to Defendants Parinejad, Webster Auto, Castro, and Olympics Towing.

10

44.     Defendant Smith wholesaled vehicles to Defendants Parinejad, Webster Auto, Castro, and Olympics Towing, and personally received cash or checks made out to him personally in return for the vehicles. Defendant Smith deposited these sums of money into his personal checking account. By doing so, he converted those funds generated by the sale of these vehicles which belonged to Chambers Infiniti.

45.     Defendants Parinejad, Webster Auto, Castro, and Olympics Towing, after paying wholesale prices for vehicles directly to Defendant Smith, and thereby knowingly defrauding Chambers Infiniti, sold those vehicles to customers for significant profits. Defendants Parinejad, Webster Auto, Castro, and Olympics Towing deposited these funds, which included profits generated from these sales, into their accounts. By doing so, these Defendants converted those funds which belonged to Chambers Infiniti.

46.     Chambers Infiniti made demand on Defendants Parinejad and Webster Auto Sales for return of three identified vehicles that Defendant Smith wholesaled to them. Chambers Infiniti has not been paid for these vehicles. Defendants Parinejad and Webster Auto Sales have refused to return these vehicles to Chambers Infiniti. By failing to return these vehicles, Defendants Parinejad and Webster Auto Sales have converted them unlawfully.

47.     As a result, Chambers Infiniti has suffered substantial damages in an amount to be determined at trial.

## COUNT III: FRAUD
### (Chambers Infiniti v. Defendants Smith, Parinejad, Webster Auto, Castro, Olympics Towing)

48.     Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

49.     Defendant Smith, by engaging in unlawful wholesaling to the other defendants, engaged in intentional deceit by making false statements of material fact to Chambers Infiniti or omitting material facts necessary in order to make the statements not misleading with regard to improperly wholesaling vehicles owned by Chambers Infiniti.

50.     Defendant Smith knew or recklessly disregarded the falsity of his untrue statements or omissions of material fact. Defendant Smith intended that Chambers Infiniti rely on the falsity of the statements or omissions to continue to allow him to unlawfully wholesale vehicles to the other defendants. Chambers Infiniti was unaware of the falsity of Defendant Smith's representations and justifiably relied on them to its detriment.

51.     Defendants Parinejad, Webster Auto, Castro, and Olympics Towing, by engaging in unlawful wholesaling with Defendant Smith, engaged in intentional deceit by making or facilitating Smith's false statements of material fact or omitting material facts necessary in order to make the statements not misleading with regard to re-selling vehicles that they had unlawfully purchased from Defendant Smith.

52.     Defendants Parinejad, Webster Auto, Castro, and Olympics Towing knew or recklessly disregarded the falsity of their untrue statements or omissions of material fact. They intended others, including without limitation customers to whom they sold these vehicles, to rely on the falsity of the statements or omissions to allow them to re-sell these vehicles. Others, including without limitation customers who purchased these vehicles, justifiably relied on Defendants to the detriment of Chambers Infiniti

53.     As a direct and proximate result of the defendants' material misrepresentations and omissions, Chambers Infiniti has been damaged in an amount to be determined at trial.

## COUNT IV: CONSPIRACY
### (Chambers Infiniti v. Defendants Smith, Parinejad, Webster Auto, Castro, Olympics Towing)

54.     Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

55.     Defendant Smith unlawfully wholesaled vehicles to the other Defendants in violation of Chambers Infiniti's corporate policy.

56.     Defendants Parinejad, Webster Auto, Castro, and Olympics Towing unlawfully purchased these wholesaled vehicles from Defendant Smith, knowing it was improper for them to do so, and then re-sold these vehicles to customers at a higher markup price.

57.     Defendant Smith would receive a portion of the proceeds of the resale of the vehicles.

58.     The actions of Defendants Smith, Parinejad, Webster Auto, Castro, and Olympics Towing were part of a common and agreed upon unlawful scheme to purchase discounted vehicles at wholesale prices, and to then sell them to customers for profit for their own benefit and to the detriment of Chambers Infiniti.

59.     Each Defendant knew that the other Defendants' actions constituted a breach of duty and/or violation of law, but nonetheless substantially assisted, aided, abetted and encouraged each other's actions as part of a common agreement to commit a tortious act.

60.     As a direct and proximate result of the defendants' concerted actions, Chambers Infiniti has been damaged in an amount to be determined at trial.

## COUNT V: BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
### (Chambers Infiniti v. Defendant Smith)

61.     Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

13

62.     Defendant Smith breached his fiduciary duty and/or duty of loyalty to Chambers Infiniti through his actions/omissions alleged above including, without limitation, wholesaling vehicles to the other Defendants to the detriment of Chambers Infiniti.

63.     Defendant Smith's breaches of fiduciary duty and/or the duty of loyalty have caused Chambers Infiniti significant damages which Chambers Infiniti will prove at trial.

### COUNT VI: BREACH OF GOOD FAITH AND FAIR DEALING
### (Chambers Infiniti v. Defendant Smith)

64.     Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

65.     Every contract contains an implied covenant of good faith and fair dealing.

66.     As a result of Defendant Smith's employment arrangement with Chambers Infiniti, Defendant Smith owed Chambers Infiniti an implied duty of good faith and fair dealing.

67.     Defendant Smith breached his duty of good faith and fair dealing to Chambers Infiniti through his actions/omissions alleged above including, without limitation, wholesaling vehicles to the other defendants to the detriment of Chambers Infiniti.

68.     Defendant Smith's breach of duty of good faith and fair dealing caused Chambers Infiniti significant damages which Chambers Infiniti will prove at trial.

### COUNT VII: AIDING AND ABETTING
### (Chambers Infiniti v. Defendants Parinejad, Webster Auto, Castro, Olympics Towing)

69.     Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

70.     Defendants Parinejad, Webster Auto, Castro, and Olympics Towing had actual knowledge of Defendant Smith's breaches of duties to Chambers Infiniti, as described above, and

14

provided substantial assistance and encouragement to Defendant Smith in committing those breaches.

71.    These actions have caused Chambers Infiniti to suffer damages for which it is entitled to recover in an amount which Chambers Infiniti will prove at trial.

## COUNT VIII: TORTIOUS INTERFERENCE
### (Chambers Infiniti v. Defendants Parinejad, Webster Auto, Castro, Olympics Towing)

72.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein.

73.    Defendant Smith and Chambers Infiniti were parties to a valid and enforceable employment arrangement.

74.    Defendants Parinejad, Webster Auto, Castro, and Olympics Towing knew about the employment arrangement between Defendant Smith and Chambers Infiniti.

75.    By engaging in the acts and conduct described above, Defendants Parinejad, Webster Auto, Castro, and Olympics Towing intended to induce Defendant Smith into breaching the terms and conditions of his employment with Chambers Infiniti.

76.    Defendants Parinejad, Webster Auto, Castro, and Olympics Towing were not privileged to induce Defendant Smith into breaching the terms and conditions of his employment with Chambers Infiniti.

77.    As described above, Defendant Smith breached the terms and conditions of his employment with Chambers Infiniti.

78.    These actions have caused Chambers Infiniti to suffer damages in an amount which Chambers Infiniti will prove at trial.

### COUNT IX: VIOLATION OF G.L. C. 93A
**(Chambers Infiniti v. Defendants Parinejad, Webster Auto, Castro, Olympics Towing)**

79.    Chambers Infiniti repeats and re-alleges each and every allegation as if set forth herein

80.    Defendants Parinejad, Webster Auto, Castro, and Olympics Towing at all relevant times were engaged in trade or commerce in Massachusetts within the meaning of G.L. c. 93A.

81.    The actions and omissions of Defendants Parinejad, Webster Auto, Castro, and Olympics Towing, as set forth herein, constitute unfair and deceptive acts or practices in violation of G.L. c. 93A, sections 2 and 11. As described above and without limitation, their participation in aiding and abetting Smith's breaches of duties and violations of law, and the conspiracy among and between them, constitute a c. 93A violation

82.    These unfair and/or deceptive acts and practices were committed knowingly and willfully, and constitute bad faith violations of G.L. c. 93A.

83.    As a result of the acts and practices described above, which were committed knowingly and willfully, Chambers Infiniti has sustained damages in an amount it will prove at trial

WHEREFORE, Herb Chambers 1186, Inc. d/b/a Herb Chambers Infiniti of Boston, requests that this Court grant the following relief:

i.    Enter judgment in its favor on all counts of the respective claims for relief as set forth in the Verified Complaint above, with accompanying damages awarded in an amount to be proven at trial under applicable statutory and/or common law;

ii.    Treble damages and award attorneys' fees in accordance with Massachusetts General Laws Chapter 93A;

16

iii.   Award pre- and post-judgment interest as allowed by law;

iv.   Award recoverable costs associated with this lawsuit; and

v.   Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Herb Chambers 1186, Inc. d/b/a Herb Chambers Infiniti of Boston demands a jury trial

on all claims so triable.

Respectfully Submitted,

HERB CHAMBERS 1186, INC. d/b/a
HERB CHAMBERS INFINITI OF BOSTON,

By its Attorneys,

Howard M. Cooper (BBO # 543842)
Ian J. Pinta (BBO # 667812)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: April 2, 2012

## VERIFICATION

I, Bradford A. Gomes, am the Director of Operations for The Herb Chambers
Companies. I state under pains and penalties of perjury that I have read the foregoing Verified
Complaint and that the factual allegations contained therein are true and accurate.

Signed under the pains and penalties of perjury this 19th day of April 2012

Bradford A. Gomes

17

EXHIBIT 1

192217



**CITY OF SOMERVILLE**
Commonwealth of Massachusetts

Class 2 Used Car Dealer

License Expires <u>12/31/2012</u>

This is to certify that Prestige Auto Imports Inc, dba Webster Auto Sales, 61 Prospect St,

has been granted a/an Class 2 Used Car Dealer license in the City of Somerville at the above-listed address only (if an address is listed).

This license is issued subject to the provisions of the General Laws of the Commonwealth, and of all ordinances, regulations or conditions of the Board of Aldermen, including but not limited to any listed below.

Hours:  M-F 9-7, Sa 9-5, Su 12-5
Cars:  22
Cars in:  0
Cars out:  22
Specific Conditions:

Attest:

John J. Long
City Clerk

*This license must be posted in a conspicuous place on the premises.*

**EXHIBIT 2**

DF·

# The Commonwealth of Massachusetts

**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place - Room 1717, Boston, Massachusetts 02108-1512

Filing Fee: $125.00
Late Fee: $25.00

04-3283967 ✓

## Annual Report for Domestic and Foreign Corporations
(General Laws Chapter 156D, Section 16.22, 950 CMR 113.57)

110013526

(1)  Exact name of the corporation: PRESTIGE AUTO IMPORTS   INC
(2)  Jurisdiction of incorporation:  MASSACUSETTS
(3)  Street address of the corporation's registered office in the commonwealth (number, street, city or town, state, zip code):

   78 TRUMAN RD                    NEWTON CENTER            MA 02459

(4)  Name of the registered agent at the registered office.    REZA PARINEJAD
(5)  Street address of the corporation's principal office (number, street, city or town, state, zip code):

   61 PROSPECT STREET              SOMERVILLE               MA 02143

(6)  Provide the names and addresses of the corporation's board of directors and its president, treasurer, secretary, and if different, its chief executive officer and chief financial officer.

| NAME | ADDRESS |
|---|---|
| President: REZA PARINEJAD | 78 TRUMAN RD     NEWTON CEN MA 02459 |
| Treasurer: AS ABOVE | AS ABOVE |
| Secretary: AS ABOVE | AS ABOVE |
| Chief Executive Officer: | |
| Chief Financial Officer: | |
| Directors: AS ABOVE | AS ABOVE |

(7)  Briefly describe the business of the corporation:
   USED CAR DEALERSHIP

(8-9) Capital stock of each class and series:

| CLASS OF STOCK | TOTAL AUTHORIZED BY ARTICLES OF ORGANIZATION OR AMENDMENTS Number of Shares | TOTAL ISSUED AND OUTSTANDING Number of Shares |
|---|---|---|
| COMMON | 20000 | 100 |
| PREFERRED | | |

(10)  Check if the stock of the corporation is publicly traded ☐
(11)  Report is filed for fiscal year ending ___12___ ___31___ ___2010___
                                            (month)   (day)   (year)

Signed by: _____

☐ Chairman of the board of directors   ☒ President   ☐ Other officer   ☐ Court-appointed fiduciary

on this    09    day of   MARCH                              2011

c158ca1522950c11357 11/23/06

EXHIBIT 3

MA SOC   Filing Number: 201276667070    Date: 3/13/2012 12:16:00 AM



# The Commonwealth of Massachusetts
# William Francis Galvin

Minimum Fee: $100.00

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

## Annual Report
(General Laws, Chapter 156D, Section 16.22; 950 CMR 113.57)

Federal Employer Identification Number: <u>001061848</u> *(must be 9 digits)*

1. Exact name of the corporation: <u>OLYMPICS TOWING, INC.</u>

2. Jurisdiction of Incorporation:  State: <u>MA</u>   Country:

3,4. Street address of the corporation registered office in the commonwealth and the name of the registered agent at that office:

| | |
|---|---|
| Name: | <u>GENANE G. CASTRO</u> |
| No. and Street: | <u>134 NEWBURY ST. REAR</u> |
| City or Town: | <u>PEABODY</u>   State: <u>MA</u>   Zip: <u>01960</u>   Country: <u>USA</u> |

5. Street address of the corporation's principal office:

| | |
|---|---|
| No. and Street: | <u>134 NEWBURY ST. REAR</u> |
| City or Town: | <u>PEABODY</u>   State: <u>MA</u>   Zip: <u>01960</u>   Country: <u>USA</u> |

6. Provide the name and addresses of the corporation's board of directors and its president, treasurer, secretary, and if different, its chief executive officer and chief financial officer.

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| PRESIDENT | GENANE G CASTRO | 315 CHARGER ST . APT. 77<br>REVERE, MA 02151 USA |
| TREASURER | GENANE G CASTRO | 315 CHARGER ST., APT 77<br>REVERE, MA 02151 USA |
| SECRETARY | GENANE G CASTRO | 315 CHARGER ST , APT 77<br>REVERE, MA 02151 USA |
| DIRECTOR | GENANE G CASTRO | 315 CHARGER ST , APT 77<br>REVERE, MA 02151 USA |

7. Briefly describe the business of the corporation:

<u>TOWING SERVICES</u>

8. Capital stock of each class and series:

| Class of Stock | Par Value Per Share<br>Enter 0 if no Par | Total Authorized by Articles<br>of Organization or Amendments | | Total Issued<br>and Outstanding<br>Num of Shares |
|---|---|---|---|---|
| | | Num of Shares | Total Par Value | |
| CWP | $1.00000 | 15,000 | $15,000.00 | 0 |

9. Check here if the stock of the corporation is publicly traded: ___

10. Report is filed for fiscal year ending: 12/31/ 2011

Signed by    GENANE G. CASTRO , its    PRESIDENT
on this 13 Day of March, 2012

© 2001 - 2012 Commonwealth of Massachusetts
All Rights Reserved

EXHIBIT 4

# THE HERB CHAMBERS
## COMPANIES
### JENNINGS ROAD MANAGEMENT CORP.

April 11, 2012

VIA UPS Overnight and
email to websterautosales@rcn.com

Mr. Ray Parinejad
Webster Auto Sales
61 Prospect Street
Somerville, MA 02143

Dear Mr. Parinejad;

Please be informed that Herb Chambers Infiniti of Boston has discovered that the following vehicles have been unlawfully removed from the dealership and are currently being offered for sale on your website www.websterusedcars.com:

- 2004 Hummer H2, Vin: 5GRGN23U14H106389
- 2005 Subaru Legacy, Vin: 4S3BL676054204228
- 2003 Infiniti G35X, Vin: JNKCV51E93M016229

As we discussed in our telephone conversation at 2:50pm today, the Hummer is currently located at a lot which appears to be owned by J.C. Auto Repairs, 91 Prospect St., Somerville MA. According to "Louie" at J.C Auto Repairs, the vehicle belongs to you. In our conversation you agreed that it was yours and told me you would look into it and get back to me.

Our legal counsel will be in touch shortly, but we demand that the above referenced vehicles be returned to us immediately and, at a minimum, not be transferred off your lot.

Thank you.

Bradford A. Gomes
Director of Operations
The Herb Chambers Companies

259 McGrath Highway * P.O. Box 45432 * Somerville, MA 02145-0004 * Tel 617-666-8333 * Fax 617-666-8448
www.herbchambers.com

EXHIBIT 5

**Pinta, Ian**

| | |
|---|---|
| **From:** | Cooper, Howard |
| **Sent:** | Monday, April 16, 2012 2:49 PM |
| **To:** | 'skatsenes@aol com' |
| **Cc:** | 'Brad Gomes'; jxaros@herbchambers.com; Pinta, Ian |
| **Subject:** | RE: The Herb Chambers Companies/Webster Auto Sales, Inc. d/b/a Webster Used Car Sales and Reza Parinejad |

Ms. Katsenes –

Thank you for responding on a holiday.

It is very disappointing that your client refuses to return the vehicles as requested. It is my understanding that your client wrote numerous checks and made payments to Donald Smith personally, and not the dealership (which the documents made clear owned the vehicles your client was purchasing). I further understand that your client was well aware that the dealership did not wholesale used vehicles. Last, I understand that your client made a significant profit on the sale of vehicles purchased from Mr. Smith.

If your client believes that this information is not correct, and wishes to provide documents supporting its professed good faith, then I invite it to do so through you. Obviously we cannot compel your client's cooperation, but it would certainly be very welcome.

Thank you.

Howard Cooper

Howard M. Cooper

---

TODD & WELD LLP
28 State Street
Boston, MA  02109
T  617-720-2626
F  617-227-5777
www.toddweld.com

Please consider the environment before printing this email.

**From:** skatsenes@aol com [mailto:skatsenes@aol.com]
**Sent:** Monday, April 16, 2012 2:28 PM
**To:** Cooper, Howard
**Subject:** Re: The Herb Chambers Companies/Webster Auto Sales, Inc. d/b/a Webster Used Car Sales and Reza Parinejad

Mr. Cooper -

Whatever vehicles my client purchased, he did so in good faith, without any involvment in any effort to defraud the dealership, as you allege. As I previoulsy informed you, Mr. Parinejad will continue to hold the 3 vehicles and not offer them for sale

Rest assured, there will be no destruction of any records. However, given your accusations and the tone of your email, neither will there be any cooperation from me with respect to producing those records

1

Sylvia Katsenes

-----Original Message-----
From: Cooper, Howard <hcooper@toddweld.com>
To: Sylvia Katsenes (skatsenes@aol.com) <skatsenes@aol.com>
Cc: 'Brad Gomes' <bgomes@herbchambers.com>; jxaros <jxaros@herbchambers.com>, Pinta, Ian <ipinta@toddweld.com>
Sent: Mon, Apr 16, 2012 12:39 pm
Subject: The Herb Chambers Companies/Webster Auto Sales, Inc  d/b/a Webster Used Car Sales and Reza Pannejad

Ms. Katsenes --

We have had an opportunity to investigate further the matter of the unlawful removal of vehicles from the Herb Chambers dealership. While we continue to try and understand the scope of what has taken place here over the past year plus time period, based upon what we have learned to date it is now apparent  that your client took title to, and possession of, numerous vehicles owned by The Herb Chambers Companies yet did not make payment to the appropriate entity reflected on the title and related documents. Instead, payment was made by cash or check to Donald Smith personally. There can be no excuse or explanation for this other than your client being fully complicit in an effort to defraud the dealership.

My client hereby demands that the 3 vehicles which you have confirmed currently remain in your client's possession (the VIN numbers for which have been supplied to your client via letter) be returned to the Herb Chambers dealership by 5 pm today. Please confirm by return email that this will happen today. My client further demands that all documents related to any and all transactions between your client and Mr. Smith be preserved.

All rights reserved.

Thank you.

Howard Cooper

Howard M. Cooper

**Todd & Weld** LLP
28 State Street
Boston, MA  02109
**t** 617-720-2626
**f** 617-227-5777
www.toddweld.com

Please consider the environment before printing this email.

This e-mail, and any attachments thereto, is intended only for the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient, you are hereby notified that any

dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof.

To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax penalties.

EXHIBIT 6

# Donald A. Smith

48 KENT STREET #1
BROOKLINE, MA. 02445
E-mail dons92560@aol.com

Phone: 617-304-6859
Mobile: 617-304-6859

## GENERAL MANAGER – AUTOMOTIVE INDUSTRY
### *Emerging Automotive Dealerships / Automotive Consultant / Business Professional*

Dynamic and competitive automotive management professional with over 20 years experience in retail/wholesale automotive environment. Imaginative and innovative individual with proven management, sales, advertising, marketing and new business development skills set. A history of significant profit, volume and customer satisfaction achievements, which illustrate the ability to combine cost control, revenue growth and process improvements through effective staff training and motivation.

| | | |
|---|---|---|
| STRATEGIC PLANNING | TEAM-BUILDING | MARKET ANALYSIS |
| BUDGETING/FINANCE | STAFF DEVELOPMENT | NEW/USED VEHICLES |
| RETAIL SITE DEVELOPMENT | PROFITABILITY IMPROVEMENT | ADVERTISING & MARKETING |

## PROFESSIONAL EXPERIENCE

**GREAT ROAD AUTO IMPORTS     DEALER/PARTNER**             February 2007- Present

Partner of a pre-owned car dealership in Acton Massachusetts, currently selling 250 PRE OWNED units per year with an average front end gross of $2209 per unit. Responsible for maintaining 3 dealership web sites (cars.com, autotrader.com and our own web site) as well as maintain schedule of 2 sales employees. Maintain, recondition and repair an inventory of 40-50 pre own units.

**HERB CHAMBERS TOYOTA of BOSTON**             MAY 2006- FEBRUARY 2007

## GENERAL MANAGER

Herb Chamber Motor Group is the 6th Largest privately owned group in the country with 42 stores in New England.

Directly responsible for overall profitability of a Metro-Boston Toyota dealership increasing sales from the low 100's to low 200's within a few months. My last month TOB finished 15 of 79 in New England for sales. Redefined and implement a new delivery system that resulted in Sales CSI increasing from solid red to overall green. I oversaw and controlled all daily operations, policy implementation, advertising/promotions and strategic direction. With help from corporate fixed operations and sales directors set and administer budgets. Helped recruit, hire and motivate a sales staff of 22 salespeople, key management and support personnel for sales, finance and insurance, service and parts departments; evaluate overall and individual performance, and devise and implement proactive management training processes. Establish departmental goals with management team, which are based on exceeding the expectations of customers through continuously improving products and services. Provide an environment of mutual trust and respect and demand the highest ethical standards from staff and management. Achieved our monthly TOYOTA sales objectives 8 of 9 months and achieved our parts objectives all months.

**COLONIAL AUTOMOTIVE GROUP**                    December (1991/2001)-(2001/2004)

*Colonial Automotive Group dealership sells (8650) new and used vehicles and markets a complete line of aftermarket automotive products and services. CAG operates 13 franchises in Massachusetts*

### General Manager

Directly responsible for overall profitability of a Metro-Boston, Chrysler Jeep Dealership which generates more than $14 million annually in sales revenues. Define and implement long and short-term objectives; oversee and control all daily operations, policy implementation, advertising/promotions and strategic direction. Set and administer budgets; initiate cost controls to ensure profitability. Recruit, hire and motivate a staff of 23 including key management and support personnel for sales, finance and insurance service and parts departments; evaluate overall and individual performance, and devise and implement proactive management training processes. Establish departmental goals with management team, which are based on exceeding the expectations of customers through continuously improving products and services. Provide an environment of mutual trust and respect and demand the highest ethical standards from staff and management.

- Recruited to revitalize dealership that had been in an annual loss situation. Reduced losses the first year quarter of 2008.
- Successful in hiring, motivating and retaining quality personnel by creating a positive work environment, resulting in increased employee retention and excellent customer satisfaction. Created and implemented a comprehensive employee satisfaction program and benefit package.
- Reduced total expenses by correcting cash-flow problems, improving inventory turnover, and upgrading facilities to enhance energy savings and environmental compliance.
- Create and design all advertising and marketing campaigns; knowledgeable in all media venues with expertise in print and electronic marketing. Demonstrated experience in e-commerce initiatives
- Perform annual budgeting, including capital requirements, and implement weekly forecasting and reporting.

### Donald A. Smith

**Natick Subaru.** Natick, Massachusetts                    2003/2005.

### General Manager/Operator

Directly responsible for the dealerships overall profitability. Management of the Sales, Service and parts departments of the #3 Subaru Dealership in New England. Dealer relocated to Florida thus entire responsibility of all day to day operations. Redefined the dealerships short-termed objectives and goals. Set and administered budgets while initiating cost controls to ensure profitability. Recruited, hired, and motivated a staff of 29 including key management and support personnel for sales, finance and insurance, service and parts departments. Evaluated overall store and individual performance devised and implemented proactive management training processes. Established each department's goals with the management team. These were based on exceeding the expectations of customers through continuously improving training, product knowledge, and improved on exceeding the expectations of customers through continuously improving training, product knowledge, and improved services. Provided a safe and harmonious working environment for all employees and customers

| | |
|---|---|
| **Colonial Volkswagen Westborough, Massachusetts** | 2001/2003 |
| General Manager | |
| **Colonial South Chevrolet Fall River, Massachusetts** | 1993/1994 |
| General Manager | |
| **Cityside Subaru Arlington, Massachusetts** | 1994/1996 |
| General Sales Manager | |
| **Colonial Chevrolet Acton, Massachusetts** | 1991/1993 |

Subaru of New England Norwood, Massachusetts                    1996/2001

**Regional Sales Manager**

Hired and trained a staff of 5 District Sales Managers the helped the 61 New England Subaru dealerships and deal principals become the most successful and profitable Subaru dealers in the United States. Established regional sales quotas, district sales goals as well as each dealerships sales quotas. Maintained contact with all sixty Subaru dealer principal/operators regarding all faucets of the New England sales environment while acting as the liaison with the Subaru of New England Dealer Counsel. Directed and supported the allocation of vehicles to the New England dealer base as well as accessories and after cell Products. Consistently the number 1 region in the United States with Subaru Sales.

District Sales Manager

Responsible for the 13 district 4 Subaru Dealerships sales objectives, CSI levels, Allocation, and financial Statement review. Maintained contact with the General Manager and Dealers regarding each dealerships quotas and performance. Consulted with the dealer operators on Subaru of America's policies and protocol, as well as a monthly summary of each dealership's profitability.

Donald A. Smith

## REFERENCES

PATRICK BROWNE
COO
COLONIAL AUTOMOTIVE GROUP
617 413-3322

RICHARD WHITE
DEALER
CITYSIDE SUBARU
781 641 1900

LEE WEISBERG
FORMER DEALER NATICK
PRESIDENT S.N.E DEALER COUNSEL
561-512-6667

WILLIAM McConnell
FORMER DEALER
METROWEST DODGE
617 799 5382

LARRY GORDON
DEALER
COLONIAL AUTOMOTIVE GROUP
978 263 1000

REZA PEREINAJAD
DEALER/PARTNER
GREAT ROAD AUTO IMPORTS
617 593 6551

DON MARINO
GM
SUBARU,L-M, MAZDA OF SANTA MONICA
310 319 3603

PAUL RICHARDS
FIXED OPERATIONS CONSULTANT
COLONIAL AUTOMOTIVE GROUP
CHAMBER GROUP      978 607 6138

DOUG JOHNSON
FORMER TOYOTA USA
HERB CHAMBERS
508 269 4767

FINN KEANELLY
DSM TOYOTA 1 AND 4
774-273-0315

Howie Reske
HERB CHAMBERS
GROUP GENERAL MANAGER
617 739 6600

PHILLIP PORTER
DEALER
SUBARU OF JACKSONVILLE
904 641-6455

ROBERT LEVENSON
GM
VILLAGE HONDA
781 896 0925

EXHIBIT 7

**DF**

### The Commonwealth of Massachusetts
**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place - Room 1717, Boston, Massachusetts 02108-1512

Filing Fee: $125.00
Late Fee: $25.00

27-1615861

Annual Report for Domestic
and Foreign Corporations
(General Laws Chapter 156D, Section 16.22; 950 CMR 113.(?))

0000353019146

(1) Exact name of the corporation. GREAT ROAD AUTO IMPORTS INC

(2) Jurisdiction of Incorporation. MASSACHUSETTS

(3) Street address of the corporation's registered office in the commonwealth (number, street, city or town, state, zip code):

    *78 Truman Newton MA 02459*

(4) Name of the registered agent at the registered office    REZA PARINEJAD

(5) Street address of the corporation's principal office (number, street, city or town, state, zip code).

    140   GREAT ROAD            ACTON                    MA 01

(6) Provide the names and addresses of the corporation's board of directors and its president, treasurer, secretary, and if different, its
    executive officer and chief financial officer.

| NAME | ADDRESS |
|---|---|
| President: REZA PARINEJAD | 78 TRUMAN    NEWTON CEN MA 02459 |
| Treasurer: REZA PARINEJAD | 78 TRUMAN    NEWTON CEN MA 02459 |
| Secretary: REZA PARINEJAD | 78 TRUMAN    NEWTON CEN MA 02459 |
| Chief Executive Officer: | |
| Chief Financial Officer: | |
| Directors: REZA PARINEJAD | 78 TRUMAN    NEWTON CEN MA 02459 |

(7) Briefly describe the business of the corporation:
    USED CAR DEALERSHIP

(8-9) Capital stock of each class and series.

| CLASS OF STOCK | TOTAL AUTHORIZED BY ARTICLES OF ORGANIZATION OR AMENDMENTS Number of Shares | TOTAL ISSUED AND OUTSTANDING Number of Shares |
|---|---|---|
| COMMON | 20000 | 100 |
| PREFERRED | | |

(10) Check if the stock of the corporation is publicly traded ☐

(11) Report is filed for fiscal year ending:    12   31   2010
                                              (month)  (day)  (year)

Signed by

| ☐ Chairman of the board of directors | ☒ President | ☐ Other officer | ☐ Court-appointed fiduciary |
|---|---|---|---|

on this    03   day of   JANUARY    2010

o158ds1822650c11357 11/24/09

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY OF   SUFFOLK | DOCKET NO. 12-1515B |
|---|---|---|

| PLAINTIFF(S) HERB CHAMBERS 1188, INC. d/b/a HERB CHAMBERS INFINITI OF BOSTON | DEFENDANT(S) DONALD A. SMITH, JR., PRESTIGE AUTO IMPORTS, INC. d/b/a WEBSTER AUTO SALES, REZA PARINEJAD, OLYMPICSTOWING, INC. and GENANE |
|---|---|

| Plaintiff Atty | Howard M. Cooper | | | | Type Defendant's Attorney Name |
|---|---|---|---|---|---|

Type Defendant's Attorney Name

| Plaintiff Atty | Howard M. Cooper |
| Address | Todd & Weld LLP    28 State Street, 31st Floor |
| City | Boston | State | MA | Zip Code | 02109 |
| Tel | +1 (617) 720-2626 | BBO# | 543,842 |

| Defendant Atty | |
| Address | |
| City | | State | | Zip Code | |

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.         TYPE OF ACTION (specify)        TRACK

IS THIS A JURY CASE?

B99 Other Tort (specify) - Fast Track

( ● ] Yes    ( ʳ ] No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1.  Total hospital expenses                                         $
2.  Total doctor expenses                                           
3.  Total chiropractic expenses                                     
4.  Total physical therapy expenses                                
5.  Total other expenses (describe)                                 

Subtotal

B.  Documented lost wages and compensation to date                 $
C.  Documented property damages to date                            $
D.  Reasonably anticipated future medical expenses                 $
E.  Reasonably anticipated lost wages and compensation to date     $
F.  Other documented items of damages (describe)                   $  100,000

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

misappropriated vehizles

Total $  100,000

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL    $............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

n/a

I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my client with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods.

Signature of Attorney of Record _____        Date  4/20/12

A.O.S.C. 3-2007